563 So.2d 164 (1990)
John CHMIELOSKI and Florence Chmieloski, His Wife, Appellants,
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Appellee.
No. 89-01858.
District Court of Appeal of Florida, Second District.
June 8, 1990.
Rehearing Denied June 28, 1990.
*165 Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, and Wagner, Cunningham, Vaughan & McLaughlin, P.A., Tampa, for appellants.
Claude H. Tison, Jr., and Cody F. Davis of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellee.
ALTENBERND, Judge.
The plaintiffs, John and Florence Chmieloski, appeal a final summary judgment which determines that they are not entitled to underinsured motorist coverage from a primary policy of automobile insurance issued by National Union Fire Insurance Company to American International Group, Inc. (AIG). We reverse. By describing the amount of UM coverage on the declarations page as the "statutory" amount, National Union provided that amount of UM coverage which Florida statutorily requires for such a policy. In this case, the policy provides bodily injury liability limits of $1,000,000, and there is no written rejection of UM coverage. Thus, the Chmieloskis are entitled to an equal amount of UM coverage, unless National Union can establish that AIG waived the right to a written rejection by making an oral, knowing rejection of UM coverage. Quirk v. Anthony, 563 So.2d 710 (Fla. 2d DCA 1990).
Mr. Chmieloski was involved in an automobile accident on August 1, 1985. He was driving a car that was owned by his employer, AIG. His car was struck from the rear by a van, which was protected by a $10,000 liability insurance policy. Mr. Chmieloski and his wife made a claim against both the van owner's liability policy and the employer's UM policy.
The employer's policy was issued by National Union on August 24, 1983, and renewed on its anniversary. In an interesting twist of facts, Mr. Chmieloski was an insurance adjuster at the time of this accident. His employer, AIG, is the parent company of National Union. AIG did not elect to self-insure its cars and employees. See Lipof v. Florida Power & Light Co., 558 So.2d 1067 (Fla. 4th DCA 1990). Instead, it paid a premium of nearly $300,000 to its subsidiary to write this insurance policy for itself and its various subsidiaries.
*166 The facts and circumstances surrounding the issuance of this policy are not well documented in the record. To obtain this summary judgment, National Union relied exclusively on the policy and an affidavit from Tom Lanigan, an employee of AIG. The record contains no depositions. Although the policy contains numerous endorsements, protects over 1,000 automobiles, and provides coverage under the laws of many states, National Union has not produced an application for the policy, an underwriting file, or any written rejection of Florida UM coverage.
Endorsement six to AIG's insurance policy provides that the liability coverage per occurrence is subject to a single limit of $1,000,000. The declarations page contains the word "Statutory" in the blank in which one would expect to find a dollar amount of UM coverage. The policy does not contain any standard provision or endorsement which defines or explains the word "statutory." Another endorsement, which describes the rates used to calculate the premium, contains a specific charge per vehicle for bodily injury coverage and for property damage coverage, and also indicates that other coverages, including UM, are "included" within the rates.
National Union first argues that this policy does not provide UM coverage in Florida because Florida does not require a minimum monetary amount of UM coverage. It correctly observes that some states, unlike Florida, require a minimum amount of UM coverage on any policy insuring an automobile in that state. See 12A Couch on Insurance §§ 45:620-:622 (2d rev. ed. 1981). We do not accept this argument.
Florida has consistently required that the limits of UM coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured, unless the named insured selects lower limits or rejects the coverage altogether. § 627.727(2), Fla. Stat. (1983). At the time this policy was issued, the UM statute required any rejection of UM coverage to be in writing. See Quirk. If any insurance company had received an application for this policy, and the application had contained: 1) a request for $1,000,000 in bodily injury liability limits, 2) an empty blank concerning UM coverage, and 3) no written rejection of UM coverage, that insurance company would have had a statutory obligation either to provide UM limits equal to the $1,000,000 bodily injury limits or to decline to issue the policy on an incomplete application. Thus, the only reasonable interpretation of the undefined and unexplained use of the word "statutory" in the blank on the declarations page is that amount of coverage which an insurance company would have been statutorily obligated to provide under section 627.727, Florida Statutes (1983), based on the remainder of the application. In this case, that amount is $1,000,000.[1]
We have previously held that an insurer can avoid the statutorily required coverage if it proves that the named insured orally waived the statutory requirement of a written rejection by knowingly selecting a lesser limit or by knowingly rejecting UM coverage. Quirk. This requires proof of an oral rejection before the delivery of the policy, not proof of what the named insured hypothetically would have decided if the coverage had been offered.
In this case, National Union agrees that it has the burden to establish a knowing rejection of UM coverage. It maintains that the affidavit of Mr. Lanigan establishes a knowing rejection. The affidavit states:
1. All of the information contained in this Affidavit is based upon my personal knowledge.
2. My name is Tom Lanigan, and I presently work with American International Group, Inc., 99 John Street, New York, New York 10038, and my position *167 with American International Group, Inc. is Branch Manager.
3. I was involved in the business decisions surrounding the issuance of the National Insurance policy which was issued to American International Group, Inc., and a copy of the Declarations Page from that insurance policy is attached to this Affidavit as Exhibit "A".
4. On behalf of American International Group, Inc. I issued the policy indicating statutory uninsured motorist coverage in each state including Florida. This business decision was based on standard procedures that minimum uninsured motorist limits be issued unless higher limits were requested.
5. It is my understanding that the Declarations Page attached hereto as Exhibit "A" represents the terms and conditions of the policy that was renewed from the period of August, 1984, to August, 1985.
This affidavit is not sufficient to prove a knowing rejection under the standards of summary judgment. Wills v. Sears, Roebuck & Co., 351 So.2d 29 (Fla. 1977). First, one cannot determine from this affidavit whether Mr. Lanigan was the decision-maker for AIG or the agent of National Union. He apparently works for AIG, but states that he "issued the policy." National Union issued this policy. Second, if the policy was issued by National Union on a business decision to provide "minimum uninsured motorist limits ... unless higher limits were requested," National Union simply issued the policy on a standard procedure that violated Florida law. There is nothing in this affidavit to establish that National Union orally offered the applicable Florida UM limits to a representative of AIG and that AIG's representative made an oral, knowing rejection of that statutory coverage before the policy's delivery.
The Chmieloskis argue that National Union should not be entitled to avoid the statutory requirement of a written rejection by merely proving an oral rejection. They suggest that the legislature amended the statute to require a written rejection in order to eliminate the difficult issues of proof surrounding an oral, knowing rejection. They raise the possibility of collusion between the named insured and its insurer when the rejection issue is litigated by a class II insured. While this risk may exist, we doubt that many named insureds or licensed insurance agents will commit perjury to protect insurance companies from this statutory obligation. The oral, knowing rejection may involve important issues of credibility, but we trust a jury can resolve these issues with the same skill that juries employ to decide other issues of credibility.
Reversed and remanded.
THREADGILL, A.C.J., and PARKER, J., concur.
NOTES
[1] Once the policy was issued, it is possible that a proper annual notice could have validated this policy. Marchesano v. Nationwide Property & Casualty Ins. Co., 506 So.2d 410 (Fla. 1987). This record does not establish that National Union sent such a notice to its named insured/parent corporation.