583 So.2d 1026 (1991)
TRAVELERS INSURANCE COMPANY, Petitioner,
v.
James H. QUIRK, et ux., Respondents, Cross-Petitioners,
v.
SOUTHERN AMERICAN INSURANCE COMPANY, Cross-Respondent.
No. 76432.
Supreme Court of Florida.
July 3, 1991.
*1027 Lee D. Gunn IV of Gunn, Ogden & Sullivan, P.A., Tampa, for petitioner, Travelers Ins. Co.
Robert M. Daisley of Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Tampa, for petitioner/cross-respondent, Key Agency, Inc.
Jack McGill of the Law Offices of R. Jackson McGill, P.A., Venice, for respondents/cross-petitioners.
Love Phipps of Corlett, Killian, Ober, Hardeman & Levi, P.A., Miami, for cross-respondent, Southern American Ins. Co.
Steven G. Schember and John N. Critchlow of the Law Offices of Dykema Gossett, Tampa, amicus curiae for The Academy of Florida Trial Lawyers.
BARKETT, Justice.
We review Quirk v. Anthony, 563 So.2d 710 (Fla. 2d DCA 1990), based on asserted conflict with Gast v. Nationwide Mutual Fire Insurance Co., 516 So.2d 112 (Fla. 5th DCA 1987); and Empire Fire & Marine Insurance Co. v. Koven, 402 So.2d 1352 (Fla. 4th DCA 1981).[1]
James H. Quirk was a passenger in a truck that was owned by his employer, West Coast Excavating, when it collided with another automobile. Quirk sought underinsured motorist benefits under the uninsured motorist (UM) provision of his employer's policies. West Coast had two commercial automobile insurance policies which were obtained through Key Agency, Inc., an independent insurance agency: A policy issued through Travelers Insurance *1028 Company in 1983 and renewed in December 1984 was a primary policy; and a policy issued through Southern American Insurance Company in December 1984 was an umbrella policy. Neither policy provided UM coverage. Quirk sued Key Agency and the insurance companies seeking underinsured motorist coverage, alleging that these entities failed to obtain a knowing, written rejection of UM coverage from West Coast in accordance with section 627.727, Florida Statutes. The trial court granted summary judgment in favor of the insurance companies and Key Agency. The Second District reversed the summary judgments in favor of Travelers and Key Agency and affirmed the summary judgment in favor of Southern American.
Travelers contends that the district court wrongfully held that Quirk had standing to raise the absence of a written rejection of UM coverage and wrongfully decided that an independent insurance agent cannot act as broker for the insured when the agent is licensed with the insurance company that issued the policy. Quirk cross-petitions, asserting that the district court erred in affirming the summary judgment in favor of Southern American. We first address the arguments raised in Travelers' petition.
The parties agree that Quirk was covered under his employer's policy because he was a lawful occupant of a covered vehicle at the time of the accident. Because he was not the named insured or a resident family member, Quirk is considered to be a "class II insured." See Mullis v. State Farm Mut. Auto Ins. Co., 252 So.2d 229, 238 (Fla. 1971). The parties also agree that a class II insured has standing to challenge whether the named insured made a knowing rejection of UM coverage. The essence of Travelers' argument is that the requirement of a written rejection is a mere technical requirement of section 627.727 that only the named insured has standing to raise.[2] In support of its position, Travelers relies on Gast, 516 So.2d at 112, where the Fifth District held that an employee lacked standing to raise the absence of his employer's written rejection in seeking UM benefits under his employer's policy. The court stated that permissive users of an insured's vehicle "cannot complain of the insurer's failure to comply with the written notice requirements of the statute." Id. at 113.
We agree with Quirk, however, that a challenge to the written-rejection requirement is part and parcel of the challenge to a knowing rejection of UM coverage, and accordingly, Quirk has standing to raise the issue. The only rational procedure by which a class II insured can challenge the existence of a knowing rejection of UM coverage must necessarily begin with the existence of an executed rejection form. Moreover, we agree with Judge Altenbernd's reasoning in the case below:
First, the nature and extent of the 1982 and 1984 amendments make it apparent that the legislature is attempting to avoid litigation over a "knowing" rejection by placing far greater emphasis and importance upon the written rejection as a self-proving document. Second, the written rejection should make the insurance carrier's task much easier. If the underwriting file contains a signed rejection, a policy can be issued without UM. If the insured fails to sign and submit a rejection form, the carrier simply can refuse to issue a policy without UM. Given the relative simplicity of this system, the insurance carrier should not be encouraged by the courts to disregard the written rejection as a technicality. Finally, we would note that this problem frequently arises with corporate insureds. Corporations do not sustain bodily injuries and do not make UM claims. If their corporate agents and employees do not have standing to contest the carrier's failure to obtain a written rejection, no one will ever have standing.
563 So.2d at 714. Because we hold that a class II insured has standing to challenge *1029 the lack of a written rejection, we disapprove Gast on this issue.
Having determined that Quirk has standing to pursue his claim, we next decide whether Key Agency, under the circumstances presented here, could legally reject Travelers' UM coverage on behalf of West Coast.[3] Given the necessary relationship between an insurer and his "licensed," albeit not exclusive, agent, as well as the great care taken in the legislative scheme to assure that an insured appreciates the availability of UM coverage and makes a knowledgeable and deliberate decision to accept or reject it, we agree with the Second District's opinion on this question. For purposes of rejecting UM coverage, as a matter of law, "an independent agent is the insurance company's agent, and not the insured's broker, when the relevant insurance company is one of the agent's licensed companies." Quirk, 563 So.2d at 715-16. As stated by the Judge Altenbernd:
This holding is a practical rule from the public's standpoint. If a customer turns to the yellow pages and selects an insurance company, companies with captive agents look like companies with independent agents. The customer is not advised that the risks are different if he or she calls a captive agent licensed to sell coverage for only one carrier, as opposed to an independent agent licensed to sell coverage for several carriers. To make one agent the customer's broker, and the other the carrier's agent, at least for purposes of UM rejection and selection, is illogical and unsupported by any meaningful distinction. Thus, at least for this limited purpose, an agent is not an insurance broker unless the application is sent to an insurance carrier that the agent is not licensed to represent.
Id. at 716. Thus, if Key Agency was a licensed agent of Travelers, Key Agency could not reject UM coverage on behalf of West Coast as a matter of law.[4]
We turn now to Quirk's cross-petition, which asserts that the district court erred in affirming the summary judgment in favor of Southern American. Section 627.727 limits the applicability of the UM requirements to policies providing primary liability coverage for a motor vehicle. However, subsection (2) requires an excess carrier to "make available as a part of the application for such policy, and at the written request of an insured, [UM benefits] up to the bodily injury liability limits contained in such policy." § 627.727(2), Fla. Stat. (Supp. 1984). Quirk concedes that West Coast never requested UM coverage from Southern American, but he maintains that the statute requires Southern American to offer UM coverage in the application even in the absence of a written request by the insured. We agree that the statute requires an issuer of an umbrella policy to notify an applicant of the availability of UM coverage. However, we agree with Southern American that it substantially complied with this statutory notice requirement when it asked that a written form for rejection of UM coverage be executed, thereby exceeding the requirements of the statute. We therefore find summary judgment was correctly entered in favor of Southern American.
In sum, we approve the decision below and remand this case for proceedings consistent with this opinion.
It is so ordered.
SHAW, C.J. and OVERTON, McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution.
[2] Quirk and Travelers disagree as to whether the 1982 or 1984 version of the UM statute applies to the Travelers' policy. However, it is not necessary to decide this question here as it does not affect the issues argued by the parties. Southern American and Quirk agree that the 1984 version governs the Southern American policy.
[3] It is undisputed that West Coast did not execute a written rejection of UM coverage pursuant to section 627.727.
[4] We note that Travelers relies on Empire Fire & Marine Insurance Co. v. Koven, 402 So.2d 1352, 1353 (Fla. 4th DCA 1981), which held that the insured bears the risk of loss when an insurance broker rejects UM coverage on behalf of the insured, because the broker is the agent of the insured, rather than of the insurer. However, it is unclear in Koven whether or not the "broker" was an independent insurance agent who was licensed with the relevant insurance company. Thus, Koven is not necessarily inconsistent with our opinion today.