LAZZARA, Judge.
Liberty Mutual Insurance Company, Inc. (Liberty Mutual) appeals a final declaratory judgment rendered in favor of the appellees, William and Kathy Ledford (the Ledfords), which determined that it had not obtained an informed, knowing rejection of uninsured motorist coverage from its insured and thus found the limits of such coverage to be equal to the bodily injury liability limits of Liberty Mutual’s automobile insurance policy. We *1165 reverse and remand for a new trial because we find merit in Liberty Mutual’s contention that the trial court erred in excluding from the jury’s consideration relevant documentary evidence which tended to prove the critical material fact that Liberty Mutual had obtained from its insured a valid election of uninsured motorist coverage in an amount less than the bodily injury liability limits provided for in the policy. In view of this disposition, we need not reach Liberty Mutual’s arguments regarding the propriety of the trial court’s rulings excluding and admitting other evidence and denying a motion for mistrial. We do reject, however, its contentions that the trial court erred in denying a motion for partial summary judgment and a motion for directed verdict.
This appeal arises from a declaratory judgment action brought by the Ledfords in their capacities as the parents and natural guardians of their daughter, Talaya Smith, under the provisions of chapter 86, Florida Statutes (1993). Through this action they sought a determination of the amount of uninsured motorist (UM) coverage available under a business automobile insurance policy Liberty Mutual issued to its insured, H & F Groves, Inc. (H & F), covering the period of March 10, 1992, through March 10, 1993. The precipitating event for the Ledfords’ lawsuit was a motor vehicle accident which occurred on April 17, 1992. On that day, Mr. Ledford, who was an employee of H & F, was driving one of H & F’s vehicles. His daughter accompanied him as a passenger. An uninsured motorist struck the vehicle while being pursued by police officers of the city of Avon Park, Florida, causing Mr. Ledford’s daughter to sustain serious personal injuries.
A dispute later arose between Liberty Mutual and the Ledfords over the amount of UM benefits available under H & F’s policy, resulting in the Ledfords filing a declaratory judgment action to resolve this controversy.[1] They claimed that the limits of UM coverage were equal to the policy’s bodily injury Lability limits of $750,000 because Liberty Mutual had never obtained a written or oral rejection from H & F limiting such coverage to a lower amount.[2] Liberty Mutual asserted that it had in fact secured a proper written selection form from H & F limiting UM coverage to $20,000. After a trial on the merits, the jury returned a verdict finding that Liberty Mutual had not obtained “an informed knowing rejection of uninsured motorist coverage when it issued the policy to H & F Groves, Inc.” Consequently, the trial court rendered a final judgment determining that by operation of law the UM coverage under Liberty Mutual’s policy with H & F was equal to the bodily injury liability limits of $750,000. See, e.g., Adams v. Aetna Cas. & Sur. Co., 574 So.2d 1142, 1147 (Fla. 1st DCA) (holding that in the absence of an informed selection of lower UM limits by insured or an intentional rejection of such coverage by insured, UM coverage is tied to the limits of liability coverage), review dismissed, 581 So.2d 1307 (Fla.1991); Chmieloski v. National Union Fire Ins. Co., 563 So.2d 164, 166 (Fla. 2d DCA 1990) (interpreting Florida statutory law to require that the limits of UM coverage shall be not less than the limits of bodily injury liability insurance purchased by a named insured, unless the insured selects lower limits or rejects the coverage altogether).
Section 627.727(1), Florida Statutes (1991), which was in effect on the commencement date of H & F’s policy, governs the disposition of this appeal. See Quirk v. Anthony, *1166 563 So.2d 710, 713 (Fla. 2d DCA 1990), approved, 583 So.2d 1026 (Fla.1991). It provides in part that “[n]o motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state ... unless uninsured motorist coverage is provided therein or supplemental thereto.... ” This section further provides, however, that “the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds.” In order for an insured to reject UM coverage or to select such coverage in an amount less than bodily injury liability limits, this section mandates that the insured do so on an approved form. It states, in that regard, as follows:
The rejection or selection of lower limits shall be made on a form approved by the Insurance Commissioner. The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form shall be in 12-point bold type and shall state: “You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully.” If this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds.
(Emphasis added.)
The legislature added this just-quoted language to section 627.727(1) by an amendment enacted in 1984. See ch. 84^11, § 1, at 95, Laws of Fla. Its purpose for enacting the amendment was to ease the burden placed on insurance companies by the case law of Florida in proving that an insured knowingly rejected higher limits of UM coverage by requiring a “paper trail” as conclusively presumptive evidence of that fact. See Auger v. State Farm Mut. Auto. Ins. Co., 516 So.2d 1024, 1025 (Fla. 2d DCA 1987). As interpreted, the conclusive presumption created by the amendment is such that it “cannot be rebutted by testimony that the person signing the rejection form did not read it.” White v. Allstate Ins. Co., 530 So.2d 967, 969 (Fla. 1st DCA 1988), review denied, 539 So.2d 476 (Fla.1989); see also Ehrhardt, Florida Evidence, § 301.1, at 68 (1996 ed.) (describing a statutorily created conclusive presumption recognized under section 90.301 of .Florida’s Evidence Code to be of such a nature that “the opposing party may not dispute the existence of the presumed fact if the underlying facts are present”).[3] To survive constitutional scrutiny, however, the presumption cannot be used “to prevent the pleading and introduction of evidence of ex■traordinary circumstances such as forgery, fraud, or trickery in obtaining the signature[.]” White, 530 So.2d at 969; accord Johnson v. Stanley White Ins., 684 So.2d 248, 250 (Fla. 2d DCA 1996); Rodriguez v. American United Ins. Co., 570 So.2d 365, 366 (Fla. 3d DCA 1990).[4]
*1167 Against this backdrop, we turn to Liberty Mutual’s complaint regarding the trial court’s erroneous exclusion of relevant documentary evidence. At the conclusion of jury selection, the Ledfords, based on comments made by Liberty Mutual’s counsel to the prospective jurors during voir dire, moved the trial court to prohibit Liberty Mutual from introducing into evidence a particular defense exhibit. This exhibit consisted of a form which strictly complied with the notice requirements of section 627.727(1). On its face, the form reflected that it was purportedly executed by a duly authorized representative of H & F on January 22,1992, selecting uninsured motorist coverage for H & F in the amount of $20,000 for policy number AS2-151-210841-012. The Ledfords argued that this form was irrelevant because it could not be tied to the policy at issue which bore a different policy number: AS7-151-210841-102. Liberty Mutual pointed out, however, that on the “DECLARATIONS” page of the policy there was á notation that the policy was a “rewrite of AS2-151-210841-012” and thus the form was relevant because it could be traced to the policy.
Faced with this argument, the Ledfords contended that they would be unduly prejudiced if the form were admitted into evidence because of their surprise of learning for the first time that the form could be matched to the policy by the “DECLARATIONS” page. They based this argument on the fact that the corporate representative of Liberty Mutual testified at his pretrial deposition that he was unaware of any policy that matched the form. Liberty Mutual pointed out, however, that the Ledfords had been in possession of the form and policy prior to the deposition of the corporate representative, that the issue of tying the form to the policy had been raised at a previous hearing on its motion for partial summary judgment, and that any discrepancies between the corporate representative’s pretrial deposition testimony and trial testimony regarding the matching of the form to the policy were appropriate subjects for impeachment.
After extensive argument on the admissibility of the form, the trial court granted the Ledfords’ motion and excluded the form from evidence. In doing so, it made the following observation:
Well, I don’t recall the nature of the specific motion. I am going to sustain the Plaintiffs’ position on it, Counselor. Again, I recognize that substantially emasculates your ease.
(Emphasis added.) We conclude that this ruling was erroneous for the following reasons.
First, while it is true that the form contained a policy number different than the number of the policy actually issued, nevertheless, there was competent evidence on the face of both documents directly linking them to each other in the form of the language on the “DECLARATIONS” page of the policy that it was a “rewrite” of the policy number appearing on the form. This evidence, therefore, made the form relevant as tending to prove the critical material fact which the jury had to resolve: whether Liberty Mutual had obtained a signed rejection form from H & F selecting UM coverage in an amount less than the policy’s bodily injury liability limits. See § 90.401, Fla. Stat. (1995) (defining relevant evidence as “evidence tending to prove or disprove a material fact.”).
Second, we find unpersuasive the Led-fords’ argument that this evidentiary connection between the form and the policy was never brought to their attention until the jury selection process. The record is clear that the appellees had possession of the form and the policy well in advance of trial and that, based on Liberty Mutual’s representation to the trial court which the Ledfords did not dispute, the evidence of linkage had been the focus of Liberty Mutual’s argument at a pretrial hearing on its motion for partial summary judgment. Furthermore, Liberty Mutual’s corporate representative also testified at his deposition that he had obtained a signed form from H & F limiting UM coverage to $20,000 and produced and identified the form at issue as evidence of that fact, with the form then being made an exhibit to his deposition. Finally, to the extent that the pretrial deposition testimony of the corporate representative may conflict with Liberty Mutual’s theory of linkage at trial, the Ledfords are free to point out any such *1168 discrepancies through proper impeachment procedures, see §§ 90.608(1) and 90.614, Florida Statutes (1995), and to argue those conflicts to the jury.
Accordingly, because the form strictly complied with the notice requirements of section 627.727(1), a fact which the Ledfords do not dispute, the trial court’s exclusion of it from evidence deprived Liberty Mutual of attempting to obtain the evidentiary benefit of the conclusive presumption legislatively conferred by the statute. ' We must, therefore, reverse and remand for a new trial at which this form is to be admitted into evidence, assuming it is otherwise properly identified and authenticated under Florida’s rules of evidence governing the admissibility of documents.
Reversed and remanded for new trial with directions.
PARKER, A.C.J., and FULMER, J. concur.

. Although the Ledfords filed a multi-count complaint against Liberty Mutual and the city of Avon Park, the parties agreed that the issue of the amount of UM coverage available under the policy as framed in the declaratory judgment count would be tried separately from the issues raised in the other counts.

. Liberty Mutual does not contest the fact that the Ledfords' daughter was a lawful occupant of H & F's vehicle at the time of the accident. As such, she occupies the status of a class II insured and her parents on her behalf have standing to raise the issue of the absence of a rejection. See Quirk v. Anthony, 563 So.2d 710, 715 (Fla. 2d DCA 1990), approved, 583 So.2d 1026 (Fla.1991); see also Travelers Ins. Co. v. Warren, 678 So.2d 324, 326 n. 2 (Fla.1996) (explaining the difference between a class I insured and a class II insured for purposes of UM coverage and describing a class II insured as essentially a third party beneficiary to the named insured’s policy even though not named as an insured in the policy).

. Even if an insurance company fails to secure the statutorily required written rejection/selection form thus depriving it of the benefit of this presumption, a class II insured, such as the Ledfords' daughter, is not automatically entitled to UM coverage or higher limits of such coverage. See Quirk, 563 So.2d at 715. Instead, the company still has the right to prove "that the named insured orally waived the statutory requirement of a written rejection by knowingly selecting a lesser limit or by knowingly rejecting UM coverage." Chmieloski v. National Union Fire Ins. Co., 563 So.2d 164, 166 (Fla. 2d DCA 1990). Such proof must consist "of an oral rejection before the delivery of the policy, not proof of what the named insured hypothetically would have decided if the coverage had been offered." Id. In meeting this burden, an insurance company may offer evidence establishing what its routine business practice is when it discusses with its insureds UM coverage and the ramifications of rejecting or limiting such coverage. See, e.g., Lumbermens Mut. Cas. Co. v. Alvarez, 443 So.2d 279 (Fla. 3d DCA 1983); Nationwide Mut. Ins. Co. v. Jones, 414 So.2d 1169 (Fla. 5th DCA 1982); § 90.406, Fla. Stat. (1995).

. We note that the Ledfords have never claimed that such "extraordinary circumstances” exist in this case to overcome the presumption.