Dana **LEWIS**, Plaintiff,

v.

**LIBERTY MUTUAL FIRE INSURANCE COMPANY,** Defendant.

**Case No. 10–14235–CV.**

United States District Court, S.D. Florida.

May 17, 2011.

**1290**

Bradford L. Jefferson, Bradford L. Jefferson PA, Fort Pierce, FL, for Plaintiff.

Mark Steven Shapiro, Miguel Angel Gonzalez, Akerman Senterfitt, Miami, FL, for Defendant.

***ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDG-MENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDG-MENT***

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Plaintiff's Motion for Summary Judg-

ment (ECF No. 18). Defendant filed a Response in addition to a Motion for Summary Judgment (ECF No. 21). These Motions are ripe for review.

UPON CONSIDERATION of the Motions, Defendant's Response, and being otherwise fully advised in the premises of the case, the Court enters the following Order.

## I. BACKGROUND [1]

This case involves an employee who claims her insured employer chose uninsured/underinsured motorist ("UM") coverage in an insurance policy that was equal to the general liability coverage of $2,000,000. On or about February 25, 2008, Plaintiff Dana Lewis ("Lewis") was injured while operating a motor vehicle insured under a policy issued by Defendant Liberty Mutual Fire Insurance ("Liberty") to Lewis' employer United Subcontractors, Inc. ("USI"). The policy was issued with effective dates of July 1, 2007 to July 8, 2008 and contained general auto liability limits (or "bodily injury limits") of $2,000,000.

USI conducts business nationally and wanted to purchase insurance policies containing the "statutory minimum" for UM coverage in each state where it operated. Matejcek Aff. ¶ 4. In states where UM coverage was not mandatory, USI sought no UM coverage. In states, such as Florida, where UM coverage is statutorily required to be offered, USI sought the minimum-required amounts. During the underwriting process, Liberty submitted a sales proposal to USI that indicated

---

1. The facts herein are taken from both the Plaintiff's Statement of Facts contained in her Motion (ECF No. 18), and Defendant's Statement of Material Facts and Counterstatement of Material Facts (ECF No. 23). Plaintiff did not respond to or in any way controvert De-fendant's Statement of Facts. Pursuant to Local Rule 7.1(d), this Court considers Defendant's undisputed facts admitted as they are sufficiently supported by evidence in the record.

the UM coverage for the policies would be the "statutory minimum." On June 21, 2007, Liberty issued an Insurance Binder to USI that confirmed that USI's procured policies would have UM coverage only to the extent required by statute in each state it conducted business.

The policy was issued July 7, 2007. As of this date, the policy included a form entitled Florida Uninsured Motorist Coverage, which stated, in pertinent part:

> We are required by Florida law to notify you of all options available to you regarding Uninsured Motorist Coverage. They are:
>
> 1. You are entitled to Uninsured Motorists coverage in an amount equal to your limit for Bodily Injury Liability coverage.
>
> 2. You may select Uninsured Motorists limits, as low as $10,000 each person, $20,000 each accident, if your Bodily Injury limits are higher than that.
>
> 3. You may entirely reject Uninsured Motorist coverage.

Insurance Policy Form GPO 3170 (ECF No. 24–1), at 199. Subsequently, on July 18, 2007, Ron Somerville, Corporate Controller of USI, executed a Florida UM rejection form. It stated:

> YOU ARE ELECTING NOT TO PURCHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU AND YOUR FAMILY OR YOU ARE PURCHASING UNINSURED MOTORIST LIMITS LESS THAN YOUR BODILY INJURY LIABILITY LIMITS WHEN YOU SIGN THIS FORM
> . . .
>
> Florida law requires that automobile liability policies include Uninsured Motorist coverage at limits equal to the Bodily Injury Liability Limits in your policy unless you select a lower limit offer by the company or reject Uninsured Motorist Insurance entirely.

> Please indicate whether you desire to entirely reject Uninsured Motorist coverage, or whether you desire this coverage at lower than Bodily Injury Liability limits of your policy:
>
> ☐ I hereby reject Uninsured Motorists coverage.
>
> ☑ I hereby select Uninsured Motorist limits of *statutory* which are lower than my Bodily Injury limits.

Florida UM Rejection Form (ECF 24–6). The check-mark and "statutory" are handwritten in the document. The bottom of the document is signed by Ron Somerville. On or before April 4, 2008, Amendatory Endorsement 72 was added to the policy. It specifically stated that Florida UM coverage was $20,000.00.

On April 22, 2008, attorney Glenn Blake ("Blake") notified Liberty by letter of a possible claim arising under the policy relating to an accident involving employee Lewis. The claim was assigned to Liberty claims handler Jenna Key ("Key"). Pursuant to Florida law, Liberty sent Blake a copy of the policy in addition to other policy information on or about June 17, 2008. Amendatory Endorsement 72 was not included in this copy of the policy.

On or about January 2, 2009, Blake's assistant contacted Key confirming that the office received the USI UM rejection form executed by Somerville. Despite this confirmation, the assistant told Key she did not know the UM coverage limits in the policy and threatened declaratory judgment. Thereafter, Key emailed the policy to Blake's office. It is not known whether this copy of the policy included Amendatory Endorsement 72. On January 6, 2009, Blake wrote a letter to Liberty Mutual seeking to confirm that the UM coverage limits were equal to the bodily injury limits of $2,000,000. Key responded to this letter by e-mail, mistakenly writing: "Please take this email as written confir-

mation to your letter that the UM statutory limits are the same as the BI [bodily injury] limits listed in the policy." Key E–Mail of January 20, 2009 (ECF No. 26), at 13.

Blake again wrote to Key asking her to re-confirm that the statutory limits were the same as the bodily injury limit of $2,000,000. Upon receiving this letter, Key sent an e-mail to Liberty Mutual's customer service manager explaining the situation and specifically stating: "[w]e need to know the intention of the person who signed the form, Ron Somerville. Did he intend to the [sic] limits to be less than the BI? Yes [.]" Key E-mail to Donna Larson (ECF No. 26), at 18.

The claim was then assigned to Michael Ingram ("Ingram"), another claims handler at Liberty. On February 10, 2010, Ingram wrote Blake to inform him that the UM coverage limit was $20,000, and that any previous suggestions of a higher limit "were in contradiction of the actual terms of the policy." Ingram Letter to Blake (ECF No. 26), at 21. Attached to the letter was Amendatory Endorsement 72.

Plaintiff brought this action for declaratory judgment in state court on July 19, 2010. Pursuant to 28 U.S.C. § 1332, Defendant removed the case to the Southern District of Florida on September 1, 2010. Plaintiff contends the rejection form's indication it would provide UM coverage of "statutory" should be interpreted as an amount equal to the general coverage amount of $2,000,000. Defendant counters that its customer and policy executor, USI, rejected any UM amount equal to general coverage and instead opted for the minimum amount under Florida law. Defendant further argues, even if they did not expressly choose the minimum amount, that was the intent of USI, and that intent should govern.

Based on the aforementioned facts, the Court enters the following Order.

## II. STANDARD OF REVIEW

The applicable standard for reviewing a summary judgment motion is stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact *Twiss v. Kury*, 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* However, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. ANALYSIS

 Florida law requires that:

all Florida automobile liability policies to provide uninsured motorist coverage in the amount of bodily injury liability coverage unless there has been a knowing, informed rejection of such coverage or a knowing, informed selection of lower limits of coverage by the named insured.

*Diffin v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 753 F.2d 978, 980 (11th Cir. 1985); Fla. Stat. § 627.727. Evidence of a written rejection establishes a prima facie showing that uninsured motorist coverage does not apply. *Jackson v. State Farm & Cas. Co.,* 469 So.2d 191, 193 (Fla.2d Dist. Ct.App.1985). The burden then shifts to the opposing party to show the rejection was not knowing and informed. *See id.*

 The facts show that USI rejected full coverage, in writing, and the rejection was knowing and informed. In the initial policy, the form concerning Florida Uninsured Motorist Coverage expressly listed three options from which the insured could choose: (1) coverage equal to the bodily injury liability limits; (2) coverage lower than the bodily injury limits equal to $20,000 per accident; or (3) no coverage. Insurance Policy Form GPO 3170. On the UM rejection form, USI Corporate Controller Somerville checked a box next to a statement which stated: "I hereby select Uninsured Motorist limits of *statutory* which are lower than my Bodily Injury limits." Florida UM Rejection Form. Somerville wrote in the word "statutory." Though Somerville did not write in a specific number, it is clear that he was not choosing coverage equal to the bodily injury liability. Furthermore, the fact that he completed a "rejection" form demonstrates a knowing and informed rejection.

Though a series of mis-communications caused some confusion in the matter Plaintiff has raised no issue of fact or law challenging Defendant's proper execution of the policy, rejection form, or Amendatory Endorsement 72. Plaintiff claims that the word "statutory" written by Somerville on the UM rejection form means an amount equal to the general liability coverage. She relies on one case to support her proposition. In *Chmieloski v. Nat'l Union Fire Ins. Co.,* the Florida Court of Appeals found that an insurance policy with a declaration page stating "statutory" as the amount of UM coverage would be interpreted as an amount equal to the general liability coverage. 563 So.2d 164 (Fla.2d Dist.Ct.App.1990). In that case, the word "statutory" was listed on the policy's declaration page as the amount of UM coverage. *Id.* at 165–66. There was no UM rejection form. Furthermore, "statutory" was not placed in a sentence expressly stating the insured elected a UM coverage amount lower than the general liability amount. *Chmieloski* clearly is not applicable. *Id.*

USI explicitly rejected full coverage and opted for a lesser amount. The exact amount is listed in Amendatory Endorsement 72. Plaintiff offers no evidence that controverts USI's rejection of full UM coverage. Thus, summary judgment for Defendant is warranted.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED. It is further

ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment (ECF No. 21) is DENIED. The Clerk of the Court is instructed to CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED.