[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12591
Non-Argument Calendar

_____

D.C. Docket No. 9:14-cv-80461-RLR

STEVEN COCCARO,
on behalf of himself and all others
similarly situated,
SHARON COCCARO,

Plaintiffs - Appellants,

versus

GEICO GENERAL INSURANCE COMPANY,
a corporation,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 20, 2016)

Before MARCUS, JORDAN and JULIE CARNES, Circuit Judges.

PER CURIAM:

Steven and Sharon Coccaro, representative plaintiffs in a putative class action against GEICO General Insurance Company, appeal from the district court's dismissal of their complaint, alleging that GEICO had failed to comply with Fla. Stat. § 627.727, governing the selection or knowing rejection of uninsured motorist coverage ("UM coverage").  On appeal, the Coccaros argued that the district court erred in: (1) concluding that the Coccaros lacked standing to pursue declaratory and  injunctive relief against GEICO; (2) concluding that the Florida Declaratory Judgment Act was procedural and not substantive; and (3) dismissing the complaint instead of remanding the case to state court.  After thorough review, we affirm in part, vacate in part, and remand with instructions.

We review standing determinations de novo.  DiMaio v. Democratic Nat. Comm., 520 F.3d 1299, 1301 (11th Cir. 2008).  The party invoking federal jurisdiction bears the burden of proving the essential elements of standing, although "at the motion to dismiss stage, it may be sufficient to provide general factual allegations of injury resulting from the defendant's conduct."  Bochese v. Town of Ponce Inlet, 405 F.3d 964, 975 (11th Cir. 2005) (quotations omitted).  We also review the legal question of which jurisdiction's law to apply de novo.  Shaps v. Provident Life & Acc. Ins. Co., 244 F.3d 876, 881 (11th Cir. 2001).

The relevant facts, as alleged in the complaint, are these.  On October 18, 2012, Steven Coccaro applied for a GEICO Florida motor vehicle insurance policy

2

to provide protection for himself and his family members, including his wife, Sharon Coccaro.  Steven Coccaro used www.geico.com to apply for his policy, selecting bodily injury liability limits of coverage at $300,000 per person/ $300,000 per accident.  He selected far lower limits of uninsured/underinsured motorist coverage, $10,000 per person/ $20,000 per accident, using a drop-down menu on the GEICO website.  He never viewed an opt-out form, but GEICO automatically filled in his e-signature on its opt-out form nonetheless.

According to the Coccaros, the drop-down menu did not describe the requirements of Florida law, and the online application process did not require him to view an opt-out form compliant with Fla. Stat. § 627.727(1).[1]  GEICO's website

---

[1] Fla. Stat. § 627.727(1) requires that insurance companies issuing uninsured/underinsured motor vehicle insurance must provide such coverage in an amount equal to the bodily injury liability coverage afforded by the policy, unless applicants opt out of that coverage:

No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy.... **The rejection or selection of lower limits shall be made on a form approved by the office. The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form shall be in 12–point bold type and shall state: "You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully."** If this form is signed by a named insured, it will be

3

did have an opt-out form, although not one strictly compliant with the requirements of the statute, at the time Steven Coccaro applied for coverage. Individuals applying online could only access that form if they voluntarily navigated to it through a link first provided to the applicant after the application process had already been completed. Applicants did not have to view the opt-out form to complete an application, regardless of whether they selected lower limits of uninsured/underinsured motorist coverage, or even rejected that coverage entirely.

The Florida Office of Insurance Regulation ("FOIR") disapproved the opt-out form when GEICO submitted it for review, and required revisions to comply with Florida law. FOIR approved GEICO's revised form on July 8, 2013. While the form now complies with § 627.727, the Coccaros claimed "the www.geico.com website still is not operated so that an applicant is required to navigate to the form, and be fully advised of his/her options for uninsured/ underinsured motorists coverage. Instead viewing the form is still totally optional."

After Steven Coccaro had selected a GEICO insurance policy with lower uninsured/underinsured motorist coverage limits, Sharon Coccaro was severely

---

conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds.

Id. (emphasis added). We refer to the form described in the bold text as an "opt-out form." Notably, nowhere does the statute expressly mention a private right of action against insurance companies that have failed to provide a proper opt-out form. This Court has never determined, however, whether the statute provides an implied private right of action.

4

injured on September 28, 2013 in a motor vehicle collision caused by an uninsured/underinsured motorist. The Coccaros filed a claim with GEICO, and GEICO sent Steven Coccaro a form letter explaining that he had rejected uninsured/underinsured motorist coverage limits equal to the bodily injury liability limits provided under his policy when he applied via the www.geico.com website, and had instead selected the lowest level of such coverage available. GEICO tendered the Coccaros a check for $30,000, which they declined to accept. In the meantime, the Coccaros filed a lawsuit against the underinsured tortfeasor who caused the accident and against GEICO in Broward County Circuit Court.

First, we are unpersuaded by the Coccaros' claim that the district court erred in dismissing their complaint for lack of standing. At an "irreducible constitutional minimum," standing requires a plaintiff to show that:

(1) the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[;] . . .

(2) there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court[; and] . . .

(3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–561 (1992) (quotations and citations omitted). "Where the plaintiff seeks declaratory or injunctive relief, as

5

opposed to damages for injuries already suffered, for example, the injury-in-fact requirement insists that a plaintiff allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." Strickland v. Alexander, 772 F.3d 876, 883 (11th Cir. 2014) (quotations omitted). "[A] plaintiff seeking declaratory or injunctive relief must allege and ultimately prove a real and immediate -- as opposed to a merely hypothetical or conjectural -- threat of future injury." Id. (quotations and emphasis omitted).

The Coccaros claim that they and the class "[h]ave suffered an injury in fact, in that they have already purchased and have been issued a motor vehicle policy by GEICO, where GEICO has violated the strict requirements of Florida law." As for future injury-in-fact, their only claim on appeal is that because their GEICO policies may be renewed, GEICO's practice of denying high limits of uninsured/underinsured motorist coverage to individuals like the Coccaros, who may or may not have viewed the opt-out form, continues unabated. However, under Florida's statute, if the insured initially selected limits of uninsured motorist coverage lower than her or his bodily injury liability limits, GEICO is not required to provide the insured with higher limits of uninsured motorist coverage upon the policy's renewal. See Fla. Stat. § 627.727(1) ("When an insured or lessee has initially selected limits of uninsured motorist coverage lower than her or his bodily injury liability limits, higher limits of uninsured motorist coverage need not be

6

provided in or supplemental to any other policy which renews, extends, changes, supersedes, or replaces an existing policy with the same bodily injury liability limits unless an insured requests higher uninsured motorist coverage in writing."). Moreover, upon renewal, the Coccaros do not -- and cannot -- claim that they would be <u>unknowingly</u> rejecting higher UM coverage.  As Florida courts have held, the purpose of § 627.727(1) "was to ease the burden placed on insurance companies by the case law of Florida in proving that an insured knowingly rejected higher limits of UM coverage by requiring a 'paper trail' as conclusively presumptive evidence of that fact."  <u>Liberty Mut. Ins. Co. v. Ledford</u>, 691 So. 2d 1164, 1166 (Fla. Dist. Ct. App. 1997).  Thus, the alleged future injury that would occur upon renewal could not be considered an ongoing violation of the statute.

We are also unpersuaded by the Coccaros' argument that <u>any</u> dispute between an insurer and an insured over their policy obligations is a "case" or "controversy" under Article III of the Constitution.  The cases the Coccaros cite involve a declaration of an insurer's duty to defend or indemnify.  But the duty to defend or indemnify is not at issue in this declaratory judgment action -- rather, the Coccaros have sued GEICO over its duty to indemnify under the policy in a case currently pending in state court.  In this case, the Coccaros seek a declaration that because GEICO violated a state statute, it should automatically provide higher UM coverage limits to a group of policyholders, regardless of whether GEICO's duty to

7

defend or indemnify is at issue with those policyholders. We simply do not see how the Coccaros and the class can claim "a substantial likelihood that [they] will suffer injury in the future." Strickland, 772 F.3d at 883 (quotations omitted).

As for the Coccaros' argument that the standing requirements for declaratory and injunctive relief differ, it is precluded by our precedent. In Strickland, we expressly applied the same injury-in-fact standing requirement to both declaratory and injunctive relief: "Where the plaintiff seeks declaratory or injunctive relief, as opposed to damages for injuries already suffered, for example, the injury-in-fact requirement insists that a plaintiff 'allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" Id. (quoting Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1346 (11th Cir.1999)) (emphasis added). Under the prior precedent rule, we are bound to follow a prior binding precedent "unless and until it is overruled by this court en banc or by the Supreme Court." United States v. Vega-Castillo, 540 F.3d 1235, 1236 (11th Cir. 2008) (quotations omitted). Thus, because the Coccaros are not able to show a substantial likelihood of future injury, the district court did not err in concluding that the Coccaros and the class lack standing. We affirm the district court's order to the extent it concluded that the Coccaros' complaint failed to allege a justiciable controversy over which federal courts have jurisdiction.

8

We are also unconvinced by the Coccaros' argument that they would not have lacked standing to sue if the district court had recognized that the Florida Declaratory Judgment Act is substantive and had applied it -- instead of the federal Declaratory Judgment Act -- to their claim.  In a diversity jurisdiction case like this one, a court will apply federal law if the matter at hand is procedural, and will apply the law of the forum state if the matter is substantive.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  Here, the Coccaros sued "pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and Chapter 86 of the Florida Statutes."  However, Florida's Declaratory Judgment Act, found in Chapter 86 of the Florida Statutes, is a procedural mechanism that confers subject matter jurisdiction on Florida's circuit and county courts; it does not confer any substantive rights.   See Garden Aire Vill. S. Condo. Ass'n Inc. v. QBE Ins. Corp., 774 F. Supp. 2d 1224, 1227 (S.D. Fla. 2011); accord Nirvana Condo. Ass'n, Inc. v. QBE Ins. Corp., 589 F. Supp. 2d 1336, 1343 n.1 (S.D. Fla. 2008); see also Manuel v. Convergys Corp., 430 F.3d 1132, 1138 n.3 (11th Cir. 2005) ("There is little doubt . . . that the district court had to apply the [federal] Declaratory Judgment Act, rather than the state declaratory judgment act, in this action." (citation omitted)).  Because the Florida Declaratory Judgment Act is procedural as opposed to substantive, the district court did not err in construing the Coccaros' cause of

action as a claim for declaratory and injunctive relief brought under 28 U.S.C. § 2201 exclusively.

We agree, however, that the district court erred in dismissing the case with prejudice. Instead, the court should have remanded the matter to the state court from which it was removed instead of dismissing the action with prejudice. See 28 U.S.C. § 1447(c); McGee v. Solicitor Gen. of Richmond Cty., Ga., 727 F.3d 1322, 1326 (11th Cir. 2013). As 28 U.S.C. § 1447(c) explains, once a case has been removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." See Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 89 (1991) ("[T]he literal words of § 1447(c) . . . give . . . no discretion to dismiss rather than remand an action [that has been removed from state court]." (quotations omitted)). Accordingly, we vacate the portion of the district court's order dismissing the action with prejudice, and remand with instructions to remand the action to the Fifteenth Judicial Circuit Court of Florida in Palm Beach County, Florida.

**AFFIRMED in part; VACATED in part; and REMANDED with instructions.**