721 So.2d 436 (1998)
James BELMONT and Patricia Belmont, etc., Appellants,
v.
ALLSTATE INSURANCE COMPANY, Appellee.
No. 97-1573
District Court of Appeal of Florida, Fifth District.
December 4, 1998.
Eduardo R. Latour of Latour & Associates, P.A., Tarpon Springs, for Appellants.
Frank A. Miller and Jeffrey A. Caglianone of Stuart, Strickland, Caglianone & Miller, P.A., Tampa, for Appellee.
PETERSON, J.
This is an appeal of a partial final summary judgment in which the trial court determined that the appellants were not entitled to stack their uninsured motorist coverage because they elected the non-stacking option when they initially purchased their policy.
In 1991, the appellants, James and Patricia Belmont ("the Belmonts"), purchased motor vehicle insurance for their Dodge pickup truck from Allstate Insurance Company ("Allstate"). The bodily injury liability coverage in the policy was $25,000 and the uninsured motorist coverage was $20,000. At the time of issuance, James Belmont executed an uninsured motorist coverage selection/rejection form in which he elected the non-stacked form of uninsured motorist coverage. One year later, on June 29, 1992, Allstate issued to the Belmonts a renewal policy with $30,000 in bodily injury liability protection and $30,000 in uninsured motorist coverage. On November 16, 1992, a second vehicle was added to their policy, a Chevrolet van. The policy was renewed with no changes other than changes in the premiums in June, 1993, 1994, and 1995. On September 12, 1995, the Dodge pickup was deleted from the policy, but on February 26, 1996, it was re-added to the policy. One day later, the Belmonts' daughter was injured in an automobile accident in which the driver of the motor vehicle involved was uninsured.
The Belmonts brought suit against Allstate in August of 1996. They sought, in part, a declaratory judgment to determine whether their uninsured motorist coverage should be stacked. Allstate moved for summary judgment and asserted that stacking was not available because James Belmont never withdrew his initial non-stacking election. The *437 Belmonts argued in their cross-motion for summary judgment that they were entitled to stack their coverage on the two vehicles because the bodily injury liability coverage was increased during the term of the policy, and after that modification, Allstate did not obtain from them either a new rejection of uninsured motorist coverage and/or a rejection of stacked uninsured coverage. The trial court denied the Belmonts' motion for summary judgment and entered partial summary judgment in favor of Allstate. The judgment indicated that $30,000 of uninsured motorist coverage was available to the Belmonts and specifically noted that "the initial election of non-stacked coverage was in full force and effect at the time of the accident... and by the terms and conditions of the policy and Florida Statute, § 627.727(9) the coverage is limited to $30,000." The Belmonts appeal both the judgment and the denial of their cross-motion for summary judgment.
Subsection 627.727(1), Florida Statutes (1997), provides that uninsured motor vehicle coverage shall be equal to the bodily injury liability coverage of a motor vehicle policy unless an insured "makes a written rejection of [such] coverage" in whole or part. The statute further provides in part:
Unless an insured, or lessee having the privilege of requesting uninsured motorist coverage, requests such coverage or requests higher uninsured motorist limits in writing, the coverage or such higher uninsured motorist limits need not be provided in or supplemented to any other policy which renames, extends, changes, supersedes or replaces an existing policy with the same bodily injury liability limits unless an insured requests higher uninsured motorist coverage in writing.
Subsection 627.727(9), Florida Statutes (1997), allows the insurer to provide the insured with the less costly option of "non-stacked" uninsured motorist coverage in the following manner:
In connection with the offer authorized by this subsection, insurers shall inform the named insured, applicant, or lessee, on a form provided by the department, of the limitations imposed under this subsection and that such coverage is an alternative to coverage without such limitations. If this form is signed by a named insured, applicant, or lessee, it shall be conclusively presumed that there was an informed, knowing acceptance of such limitations. When the name insured, applicant, or lessee has initially accepted such limitations, such acceptance shall apply to any policy which renews, extends, changes, supersedes, or replaces an existing policy unless the named insured requests deletion of such limitations and pays the appropriate premium for such coverage.
(emphasis added).
Subsection (1), which concerns the initial rejection of UM coverage or selection of UM coverage at less than the bodily injury liability limits, applies to all subsequent renewals "with the same bodily injury liability limits unless an insured requests higher ... coverage." Subsection (9) in contrast, states that once stacking is validly rejected, it is rejected as to any policy renewal, including those, presumably, where bodily injury liability limits are changed, unless the insured "requests the deletion of [the] limitations and pays the appropriate premium for such coverage." Significantly, the original form[1] that Allstate had Mr. Belmont execute in selecting or rejecting UM coverage and selecting or rejecting the stacking option, provides in pertinent part:
I understand and agree that selection of any of the above options applies to my liability insurance policy and future renewals or replacements of such policy which are issued at the same bodily injury liability limits. If I decide to select another option at a future time, I must let the company or my agent know in writing.
(emphasis added). The above language in the form indicates that the initial rejection of stacking, just like an initial subsection (1) rejection or selection of lower UM liability limits, is effective only as a rejection for *438 policy renewals which have the same bodily injury liability limits.
In this case, the bodily injury liability limits were increased. The prior election to have non-stacked coverage cannot be viewed as a knowing rejection of stacking after the limits were changed because the contract language clearly informs the insured that the initial rejection of either UM or stacking coverage continues to apply only when the bodily injury liability limits are not modified.[2] After the Belmonts modified the limits of their policy in June of 1992, Allstate could no longer rely on the form executed by James Belmont in 1991 as proof that the Belmonts were, as to their then current policy and future renewals, knowingly rejecting non-stacking.
In Omar v. Allstate Insurance Co., 632 So.2d 214, 216 (Fla. 5th DCA 1994), this court noted the burden is on "the insurer to show an informed, knowing rejection of uninsured motorist coverage." "Full" uninsured motorist coverage, as the supreme court clarified in Government Employees Insurance Co. v. Douglas, 654 So.2d 118 (Fla.1995), includes stacking and as the court held in that case "to limit [stacking] coverage validly, the insurer must satisfy the statutorily-mandated requirement of notice to the insured and obtain a knowing acceptance of the limited coverage." Id. at 120.
Applying these principles to the instant case, we conclude that the summary judgment entered in Allstate's favor was error. At trial, Allstate may still be able to show a knowing acceptance of limited coverage by the Belmonts. It will not, however, have the benefit of the earlier signed election of non-stacking as proof of acceptance. The second district, in a case involving an overall rejection of UM coverage, stated:
We have previously held that an insurer can avoid the statutorily required coverage if it proves that the named insured orally waived the statutory requirement of a written rejection by knowingly rejecting UM coverage [citation omitted]. This requires proof of an oral rejection before the delivery of the policy, not proof of what the named insured hypothetically would have decided if the coverage had been offered.
Chmieloski v. National Union Fire Insurance Co., 563 So.2d 164, 165 (Fla. 2d DCA 1990). The court further noted that such an "oral, knowing rejection may involve important issues of credibility, but we trust a jury can resolve those issues with the same skill that juries employ to decide other issues of credibility." Id. at 167. In the instant case, the Belmonts are entitled to stacked coverage unless Allstate can establish that the Belmonts waived the right to a written rejection by making an oral, knowing rejection of non-stacked coverage.
We reverse the summary judgment in favor of Allstate, affirm the denial of the summary judgment requested by the Belmonts, and remand to the trial court for further proceedings.
REVERSED IN PART; AFFIRMED IN PART; REMANDED.
GRIFFIN, C.J., and GOSHORN, J., concur.
NOTES
[1] We note the form used was, at that time, recommended by the insurance commissioner. See Florida Informational Bulletin 87-211 (October 16, 1987).
[2] Because the resolution of this case is governed by the contract language in Allstate's form, we express no opinion whether subsection (1) and subsection (9) have different notice requirements.