**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff,**

v.

**Anna N. DUCKWORTH, Personal Representative of the Estate of Aquila E. Duckworth, Defendant.**

**Case No. 6:08–cv–377–Orl–22GJK.**

United States District Court,
M.D. Florida,
Orlando Division.

Oct. 5, 2009.

Carol M. Bishop and Reed W. Grimm, Taylor, Day, Currie, Boyd & Johnson, Jacksonville, FL, for State Farm.

## ORDER

ANNE C. CONWAY, District Judge.

## I. INTRODUCTION

Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") filed this declaratory judgment action against Defendant Anna N. Duckworth ("Duckworth") as Personal Representative of the Estate of Aquila E. Duckworth. The dispute arises from a motorcycle accident involving an uninsured motorist that occurred on March 27, 2007, which took the life of Defendant's husband, Aquila Duckworth. Aquila Duckworth was driving his 2001 Yamaha motorcycle, insured through State Farm, Policy No. 52–5759–F13–20 (the "Yamaha Policy"). State Farm distributed to Duckworth the uninsured motorist benefits available under the Yamaha policy. Duckworth also maintained two additional automobile insurance policies through State Farm: Policy No. 81–4031–C20–20, for a 1998 Chevrolet Cavalier (the "Chevrolet Policy"), and Policy No. 52–5758–A15–20, for a 1993 Ford Probe (the "Ford Policy"). Duckworth claims that State Farm is also liable for the uninsured motorist benefits under the Chevrolet and Ford policies.

State Farm seeks a declaratory judgment pursuant to 28 U.S.C.A. § 2201, interpreting the automobile insurance policies according to Maryland law and finding no uninsured motorist coverage available to Duckworth under either the Chevrolet Policy or Ford Policy for the claim arising from the accident. Duckworth contends that the policies should be interpreted according to Florida law, yielding uninsured motorist benefits under both policies. Duckworth brought counterclaims against State Farm for breach of contract and statutory bad faith regarding the Chevrolet and Ford policies, reformation of the insurance contracts, and breach of fiduciary duty as to State Farm's agents. (Doc. No. 14.) The Court dismissed the counterclaims for statutory bad faith without prejudice. (Doc. No. 23.)

The parties have filed cross motions for summary judgment. Duckworth filed her Motion for Partial Summary Judgment (Doc. No. 39) on May 1, 2009, and State Farm filed its response to the motion (Doc. No. 44) on June 1, 2009. State Farm filed its Revised Motion for Summary Judgment (Doc. No. 41) on May 1, 2009, and Duckworth filed her response (Doc. No.

43) on May 18, 2009. After careful analysis of both motions and the parties' submissions, the Court has determined that no genuine issue of material fact remains in dispute and State Farm is entitled to judgment as a matter of law.

## II. BACKGROUND

The parties do not dispute the following facts. On March 27, 2007, Aquila Duckworth was fatally injured in an automobile accident while operating his 2001 Yamaha motorcycle on U.S. Highway 1 in Edgewater, Florida. On the date of the accident, Aquila and/or Anna Duckworth (the "Duckworths") maintained separate automobile policies on the 2001 Yamaha motorcycle, the 1998 Chevrolet Cavalier, and the 1993 Ford Probe. Each policy contained uninsured motorist benefits. The Duckworths obtained the three policies through the Connie Davis Agency located in Germantown, Maryland. Connie Davis is a captive State Farm insurance agent. State Farm tendered the $100,000 uninsured motorist benefits under the Yamaha Policy for liability claims arising from the use of the motorcycle during the accident.

Anna and Aquila Duckworth "stayed" at 125 West Loop, Oak Hill, Florida (the "Florida address"), which was the home of Anna Duckworth's daughter, from June 1, 2006, through March 26, 2007.[1] The Duckworths had not lodged or dwelled in Maryland during the six consecutive months immediately preceding March 26, 2007.[2] The State Farm Move Center sent a letter (the "Move Center letter") dated December 15, 2006, to Aquila Duckworth at the Florida address. The Move Center letter gave Aquila Duckworth the address of a State Farm agent in his "new area." (State Farm's Ex. 4.) The letter also included the following paragraph:

"If your new address is temporary or a change only of your 'mailing address,' please contact me or your current agent. In these situations, your current agent may continue to serve your insurance needs." *Id.*

On March 27, 2007, Aquila and Anna Duckworth each maintained a Florida driver's license, which had been reissued to them on May 24, 2001. The residence address listed on the licenses was 1969 Ilex Avenue, Apt. 205, San Diego, California. On March 27, 2007, the Ford Probe remained titled and registered in California, and the 1998 Chevrolet Cavalier remained titled and registered in Maryland. On or before March 27, 2007, the 2001 Yamaha Motorcycle had been titled and registered in Florida.

Aquila Duckworth obtained a Florida Concealed Weapon or Firearm License on December 19, 2006. The license listed Aquila Duckworth's address as 125 West Loop, Oak Hill, Florida. Aquila Duckworth's application for American Legion Membership, dated May 31, 2006, also listed the Florida address. Neither the license nor the application was provided to State Farm on or before March 27, 2007.

On March 12, 2008, State Farm filed the present declaratory action. (Doc. No. 1.) In Counts I and II of its complaint, State Farm alleges that neither the Chevrolet Policy nor the Ford Policy covers any claims arising out of the accident. (*Id.* at ¶¶ 18, 22). State Farm seeks a declaratory judgment that interprets the Chevrolet and Ford policies according to Maryland

---

1. The Court uses "stayed" because it is the term to which the parties stipulate. (*See* Pretrial Statement (Doc. No. 50) at 18.)

2. Aquila Duckworth had been a member of the military. The Duckworths first moved from Florida in 1998 to California. They left California in 2003 for Maryland, where they lived until 2006.

law; applies the Court's interpretations to the facts of the case; determines the respective rights, status, duties, and other equitable or legal relations of the parties to the action; and specifically declares no uninsured motorist coverage is available to Duckworth under the Chevrolet and Ford policies for the claims arising from the accident. (*Id.* at pp. 6–8.)

The relevant portion of the Chevrolet and Ford policies states:

**SECTION III—UNINSURED MOTOR VEHICLE—COVERAGE U**

We will pay damages for bodily injury and property damage an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be sustained by an insured. The bodily injury or property damage must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.

**When Coverage U Does Not Apply**

THERE IS NO COVERAGE:

2. FOR *BODILY INJURY* TO *YOU, YOUR SPOUSE,* OR ANY *RELATIVE* WHILE OCCUPYING OR STRUCK AS A PEDESTRIAN BY A MOTOR VEHICLE OWNED BY *YOU, YOUR SPOUSE,* OR ANY *RELATIVE,* and which is not insured under the liability coverage of this policy.

(State Farm's Ex. 2–3 p. 14.) State Farm's position is that the Chevrolet and Ford policies were Maryland policies because they were issued in Maryland when the insureds, Aquila and Anna Duckworth, were Maryland residents; therefore, the policies should be interpreted under Maryland law. (Doc. No. 1 ¶ 14.)

On May 6, 2008, Duckworth filed affirmative defenses and a counterclaim against State Farm. (Doc. No. 14.) Duck-

worth argues in her affirmative defenses that coverage is available under all three policies, that Florida law applies to the construction of the policies because they were reissued for delivery in the State of Florida, and that the policies should be reformed because they fail to reflect the intent of the parties and because the State Farm agent violated a fiduciary duty owed to the insureds. (*Id.* at pp. 5–7.) In her counterclaim, Duckworth argues that although the Chevy and Ford policies were originally issued in Maryland, both were reissued for delivery in Florida prior to the date of the accident. Duckworth also claims both automobiles were "principally garaged" in Florida. (*Id.* at 8–9.) Duckworth argues that because the policies were "issued for delivery in the State of Florida," Florida law applies to her claims under the policies for uninsured motorist benefits. (*Id.* at 9–10.)

In Counts I and III of the counterclaim, Duckworth alleges breach of contract regarding the Chevy and Ford policies. (*Id.* at 10–13.) In both Counts, Duckworth argues that to the extent Florida law applies to the construction and enforcement of the policies, State Farm breached its contract by failing to provide and obtain acceptance as required by Fla. Stat. § 627.727(9) (2006). (*Id.*) Duckworth also argues insofar as Maryland law applies to the construction and enforcement of the policies, the exclusion upon which State Farm denied coverage is unenforceable because it is not one of the "enumerated exclusions which an insurer may include in a policy of uninsured motorist." (*Id.*) In Count V, Duckworth seeks reformation of the insurance contracts. (Doc. 14 at 14–15.) Duckworth argues that the Chevrolet and Ford policies should be reformed to remove the non-stacking exclusion because the policies "fail to reflect the mutual intent of the parties that the policies be issued in compliance with applicable law

and that the coverages be stackable." (*Id.* at 15.) Duckworth argues that reformation should be granted on the grounds that the agent who advised the Duckworths concerning their policies was a dual agent of both State Farm and the insureds who violated his or her fiduciary duty to "ascertain the insureds' needs and desires for stacked coverage" and to inform the insureds of such coverage. (*Id.*) Finally, in Count VI, Duckworth asserts breach of fiduciary duty. (*Id.* at 16.) Duckworth argues that the State Farm agent was an agent of the insureds, that the agent owed them a fiduciary duty to fully investigate the insureds' "needs and desires for insurance coverage" and to fully inform them as to the meaning of policy provisions and existence of excess coverage, that the agent breached that duty by failing to do so, and that the insureds were damaged on account of the breach.[3] (*Id.*)

### III. SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The party seeking summary judgment bears the initial burden of identifying for the district court those portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.'" *Cohen v. United Am. Bank of Cent. Fla.,* 83 F.3d 1347, 1349 (11th Cir.1996) (quoting *Cox v. Adm'r U.S. Steel & Carnegie,* 17 F.3d 1386, 1396, *modified on other grounds,* 30 F.3d 1347 (11th Cir.1994)). "There is no genuine issue for trial unless the non-moving party establishes, through the record

presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Id.* at 1349.

The Court considers the evidence and all inferences drawn therefrom in the light most favorable to the non-moving party. *See Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 918 (11th Cir.1993). This standard is not changed by cross motions for summary judgment, as the court treats each motion separately. *See Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.,* 541 F.Supp.2d 1295, 1297 (M.D.Fla. 2008). Finally, "[s]ummary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." *Id.* (internal citations omitted).

### IV. ANALYSIS

**A. Cross Motions for Summary Judgment**

**1. Plaintiff State Farm's Motion for Summary Judgment**

State Farm moves the Court to grant summary judgment on its behalf declaring that Maryland law applies to interpret the insurance contracts, reformation of the contracts is not warranted, no uninsured motorist coverage is available to Duckworth under either the Chevrolet or Ford policies, and State Farm did not breach any fiduciary duty. (Doc. No. 41 p. 1–3.) State Farm argues that Maryland law applies because both policies were delivered to the Duckworths in Maryland, were drafted in conformance with Maryland law, and were Maryland policies "when issued and continued as such upon renewal." (*Id.*

---

**3.** Counts II and IV of Duckworth's counterclaim, alleging statutory bad faith, were dismissed without prejudice by the Court on October 28, 2008. (Doc. No. 23.)

at 10.) State Farm cites several Maryland cases addressing contract interpretation to show that provisions "identical" to the policy at issue "have been upheld to be valid and enforceable." (*Id.* at 11) (citing *Powell v. State Farm Mut. Auto. Ins. Co.*, 86 Md.App. 98, 585 A.2d 286 (Md.Ct. Spec.App.1991)). State Farm also cites the holding in a Pennsylvania case that a "provision in Maryland policy which precluded stacking UM [uninsured motorist] limits on top of UM limits available under policy insuring vehicle involved in accident is valid and enforceable under Maryland law." (*Id.* at 12) (citing *DeMizio v. GEICO Gen. Ins. Co.*, No. Civ.A.05–409, 2005 WL 1693938, at *3 (E.D.Pa. July 19, 2005)). Finally, State Farm cites *Sparwasser v. Federal Kemper Insurance Co.*, 858 F.Supp. 501 (D.Md.1994), where the court found that a clause under a second automobile insurance policy that precluded uninsured motorist benefits was not invalid or in violation of Maryland law. (*Id.*) State Farm argues that these cases support application of the provisions that exclude stacking of uninsured motorist benefits in the Chevrolet and Ford policies because the language is unambiguous and under Maryland law the policies "simply [do] not provide coverage in this instance." (*Id.*)

Further, State Farm argues that Florida's "very narrow" exception to the *lex loci contractus* rule does not apply because it only operates to protect a Florida citizen where a paramount rule of public policy is involved and where the insurer was on reasonable notice that the insured was a Florida citizen. (*Id.* at 13–14) (citing *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So.2d 1160, 1165 (Fla.2006)). State Farm argues that since 1987, Florida has not considered "anti-stacking" provisions similar to the provisions at issue as paramount public policy. (*Id.* at 17.) State Farm states that the public policy of Florida

regarding uninsured motorist coverage "is found in the [uninsured motorist] statute, where it was expressed by the Florida legislature." (*Id.* at 14) (citing *Alamo Rent–A–Car, Inc. v. Hayward*, 858 So.2d 1238, 1240 (Fla. 5th DCA 2003); *Andrews v. Cont'l Ins. Co.*, 444 So.2d 479 (Fla. 5th DCA 1984); and *Aetna Cas. & Surety Co. v. Enright*, 258 So.2d 472 (Fla. 3d DCA 1972)). State Farm argues that "Florida courts have repeatedly declined to apply Florida public policy to override clauses in policies issued out-of-state, which provisions were valid under the other state's law." (*Id.* at 15) (citing *Enright*, 258 So.2d 472; *Aetna Cas. & Sur. Co. v. Diamond*, 472 So.2d 1312 (Fla. 3d DCA 1985); and *State Farm Mut. Auto. Ins. Co. v. Davella*, 450 So.2d 1202 (Fla. 3d DCA 1984)).

State Farm also asserts that it did not have reasonable notice that the Duckworths were permanently relocating to Florida. It characterizes the move to Florida as a "time of transition for the Duckworths" and argues against the Duckworths' permanent Florida residence based on the fact that the Duckworths did not register or tag the Chevrolet or Ford in Florida, did not update their driver's licenses to reflect a Florida residence address, did not own or purchase Florida property, and declined to purchase Florida insurance. (Doc. No. 41 at 18.) State Farm asserts that the Duckworths' stay in Florida at that time was only temporary, the Duckworths having advised State Farm accordingly by giving notification of a change of mailing address only. (*Id.*)

It is State Farm's position that reformation of contract is not warranted because no evidence shows a mutual mistake "relating to the terms and coverages" under the Chevrolet and Ford policies. (*Id.* at 12.) Citing Maryland caselaw, State Farm contends that in order to justify reformation of an insurance contract, appropriate

proof must be presented to show a valid agreement that does not conform to the actual agreement of the parties by reason of fraud or mutual mistake on the part of both parties. (*Id.*) (citing *Am. Cas. Co. of Reading, Pa. v. Ricas*, 179 Md. 627, 22 A.2d 484, 488 (1941); *Urquhart v. Alexander & Alexander, Inc.*, 218 Md. 405, 147 A.2d 213 (1958)). State Farm argues that the coverage provisions in the Chevrolet and Ford policies are unambiguous and there is "absolutely no record evidence" demonstrating that the Duckworths and State Farm made a mutual mistake in contracting for the uninsured motorist coverage at issue. (*Id.* at 12.)

State Farm also argues that the Maryland State Farm agent did not share a special relationship with the Duckworths and had no heightened duty to inform the Duckworths regarding "stacked" or "excess" coverage. (*Id.* at 2–3.) Regarding choice of law for tort claims, State Farm asserts that the significant relationship test applies to the claim of breach of fiduciary duty. (*Id.* at 21–22) (citing *Bishop v. Fla. Specialty Paint Co.*, 389 So.2d 999 (Fla.1980)). State Farm argues that Maryland law has the most significant relationship with this claim because the injury relates to the issuance of the policies, which occurred in Maryland. (*Id.* at 22.) Further, notes the insurer, the agent whose conduct is at issue is a Maryland agent, and the agent's place of business was Maryland. (*Id.*) Applying Maryland law, State Farm asserts that in order for Duckworth to succeed on a breach of fiduciary duty claim, Duckworth must show that the agent and Duckworth had a "special relationship." (*Id.* at 22–23) (citing *Sadler v. Loomis Co.*, 139 Md.App. 374, 776 A.2d 25 (Md.Ct.Spec.App.2001)). State Farm contends that no special relationship existed; thus, the agent only had a duty to exercise reasonable care and skill in performing her duties. (*Id.* at 23.) State

Farm points out that Duckworth denied having a special relationship with Francesca Whiting ("Whiting"), the employee who usually assisted the Duckworths at the Connie Davis Agency. (*Id.* at 24) (citing (Doc. 28–1 at 76)).

## 2. Defendant Duckworth's Motion for Summary Judgment

Duckworth asserts in her Motion for Partial Summary Judgment (Doc. No. 39) that each element of the public policy exception is present: the Duckworths were Florida citizens on the date of the fatal collision, State Farm "undoubtedly had notice" that the Duckworths were permanent residents of Florida, and the issuance of the automobile insurance contracts "without notice of the right of the insured to elect stacked coverage" violated the "fundamental public policy of Florida law." (*Id.* at 6, 11, 14.) Thus, Duckworth argues, the exception to Florida's *lex loci contractus* rule applies, Florida law should govern the contracts, and "there is coverage for the Duckworths' claim." (*Id.* at 16.)

Duckworth states that the record "conclusively establishes" that the Duckworths were Florida citizens at the time of the crash. (*Id.* at 6.) Relying on cases involving diversity jurisdiction, Duckworth argues "citizen" is defined as "domiciliary" and the Duckworths enjoy a presumption of continued Florida residency because they established Florida domicile before moving to California, and "once established, a domicile continues until it is superseded by a new one." (*Id.* at 7–8) (citing *Keveloh v. Carter*, 699 So.2d 285 (Fla. 5th DCA 1997)). Duckworth argues that their Florida domiciliary was not superseded while they spent four years in California and three years in Maryland. (*Id.* at 8.) Even if they did not have the benefit of that presumption, she asserts

they were Florida citizens while "establishing themselves." (*Id.* at 9.) Duckworth explains that Florida citizenship does not require establishment of a permanent abode in the state; being in the process of establishing themselves as permanent residents of the state is enough. (*Id.* at 10) (citing *Roach,* 945 So.2d at 1165–66 (quoting *Gillen v. United Services Auto. Ass'n,* 300 So.2d 3, 6 (Fla.1974))).

Duckworth also asserts that the "record is replete with evidence that Anna Duckworth expressly informed State Farm personnel that the Duckworths were moving permanently to Florida, as opposed to being mere visitors": the Duckworths canceled their renter's insurance, notified State Farm of the Florida address, corresponded with State Farm at the Florida address, and State Farm knew that the move was permanent (*Id.* at 11–12.) Duckworth distinguishes the insured in *Davella,* 450 So.2d 1202, who notified the insurer "that her sojourn to Florida was merely temporary." (Doc. No. 39 p. 13.) Duckworth asserts that the Duckworths "clearly conveyed" to State Farm that they were in the process of establishing themselves as permanent residents of Florida. (*Id.* at 13.)

Finally, Duckworth argues that issuing a contract without giving notice of the right to elect stacked coverage "violates the fundamental policy of Florida law." (*Id.* at 14.) It is "contrary to Florida public policy" to issue a "non-stacked policy" without a "signed, informed rejection of such coverage." (*Id.* at 14–15) (citing *Belmont v. Allstate Ins. Co.,* 721 So.2d 436, 438 (Fla. 5th DCA 1998), where the court quoted one of its previous decisions noting the insurer's burden to show an informed knowing rejection of uninsured motorist coverage.)

Duckworth does not move for summary judgment on her claims of reformation of contract and breach of fiduciary duty. Rather, Duckworth's position in her response to State Farm's motion for summary judgment is that the "fact-specific issue [regarding whether the Maryland agent had a duty to advise the Duckworths as to uninsured motorist coverage and to explain the coverage they had] cannot be determined by summary judgment, especially where the facts giving rise to the fiduciary relationship are in dispute." (*Id.* at 17.)

### B. Summary Judgment Analysis

#### 1. Choice of Law

 The resolution of the instant case hangs on a single legal issue: choice of law. "When it exercises jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, a federal court must apply the choice of law rules of the forum state to determine which substantive law governs the action." *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.,* 550 F.3d 1031, 1033 (11th Cir.2008) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Though choice of law has been called "a dismal swamp, filled with quaking quagmires," [4] the Florida choice of law rule governing contracts, *lex loci contractus,* is straightforward. The rule as applied to insurance contracts "provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." *Roach,* 945 So.2d at 1163 (citing *Sturiano,* 523 So.2d at 1129). The inflexibility of the rule is " 'necessary to ensure stability in contract arrangements.' " *Id.* at 1164 (quoting *Sturiano,*

---

4. *See Sturiano v. Brooks,* 523 So.2d 1126, 1130 (Fla.1988) (quoting Dean Prosser, *Inter-* state Publication, 51 Mich. L.Rev. 959, 971 (1953)).

523 So.2d at 1129). The rule secures the parties' bargain: "In the case of an insurance contract, the parties enter into that contract with the acknowledgment that the laws of that jurisdiction control their actions." *Id.* The parties concede that the Duckworths obtained all three policies through the Connie Davis agency located in Germantown, Maryland.[5] (Pretrial Statement at 17.) Under the rule of *lex loci contractus,* Maryland law governs the rights and liabilities of the parties because the contracts were executed in Maryland.

There the analysis would usually end, but as Duckworth raises in her counterclaim and affirmative defenses, Florida courts have carved out what the Florida Supreme Court characterizes as a "narrow" exception to the *lex loci contractus* rule.[6] *Roach,* 945 So.2d at 1164. The exception requires both a Florida citizen in need of protection and a paramount public policy. *Id.* at 1165. An additional requirement in the context of insurance contracts is that the insurer must be on reasonable notice that the insured is a Florida citizen:

> An insurer may only issue policies in a state in which it is licensed and in accordance with that state's law. The requirement of notice informs the insurer of which state's law will govern the policy. Accordingly, in applying the exception, courts consider whether the insured notified the insurer of a permanent change of residence and whether the insured risk is or will be primarily located in Florida.

*Id.* The requirement of notice "allows an insurer to decline to issue a policy, to withdraw from one, or—if it is licensed in Florida—to issue a policy in Florida and charge the appropriate premium." *Id.*

Duckworth fails to prove that she is entitled to judgment as a matter of law. Further, no genuine issues of material fact remain as to what choice of law rule should apply. Duckworth has not demonstrated any legal or factual basis that would preclude the normal operation of the *lex loci contractus* rule and justify application of the public policy exception to that rule. Hence, Maryland law applies, and Duckworth's motion for summary judgment must be denied. For its part, State Farm has carried its burden of showing that it is entitled to judgment as a matter of law based on the *lex loci contractus* rule. Thus, the Court will declare that Maryland law governs the insurance policies, and the anti-stacking provisions will be upheld.

**2. The Public Policy Exception Does Not Apply**

■ In order for the exception to apply, the insured must notify the insurer "of a permanent change of residence and whether the insured risk is or will be primarily located in Florida." *Roach,* 945 So.2d at 1165 (citing *N.J. Mfrs. Ins. Co. v. Woodward,* 456 So.2d 552 (Fla. 3d DCA 1984)). "The requirement of notice informs the insurer which state's law will govern the policy." *Id.* In Duckworth's motion for summary judgment, she argues that State Farm "knew the move to Florida was permanent." (Doc. No. 39 p. 11.) Both parties concede that the Duckworths had been staying in Florida between June 1, 2006, and March 26, 2007. (Pretrial Statement at 18.) What Duckworth must show for the exception to apply is that State Farm knew the Duckworths permanently relo-

---

**5.** The Yamaha and Ford policies were obtained in June 2003, and the Chevrolet policy was obtained in September 2005. (Pretrial Statement at 17.)

**6.** Perhaps this is one of the "quaking quagmires" of Prosser's metaphor.

cated to Florida. The only evidence she presents is that the Duckworths canceled their renter's insurance, informed State Farm of the Florida address, and corresponded with State Farm from the Florida address. (Doc. No. 39 at 11–12.) Though Duckworth says that the record is "replete with evidence" that she "expressly informed" State Farm of the permanent move, most of her statements are simply conclusory, e.g., "State Farm's agents in both Maryland and Florida knew the move to Florida was permanent." (*Id.*) She does not explain *how* they knew. The facts here are similar to a case where New Jersey residents submitted a change of mailing address form to the insurer. *See Woodward*, 456 So.2d at 553. The court in *Woodward* held that Florida law did not govern the extent of uninsured motorist coverage limits in the New Jersey policy because the change of address form contained no indication that "the insureds had changed their permanent residence to Florida or that the covered motor vehicles under the subject policy would now be principally garaged in Florida." *Id.* at 553–54. The Court finds that, as in *Woodward*, Duckworth's assertion that she gave State Farm a notice of change of address is not enough evidence to create a triable issue concerning whether State Farm knew the move to Florida would be permanent.

In her deposition, Duckworth initially testified that she recalled making a specific statement to Whiting that, effective a certain date in May 2006, "I am permanently living in Florida." (Doc. No. 28–1 at 86.) Later in her deposition, when asked what more she recalled about this conversation, Duckworth said, "I don't recall anything specific about that conversation." (*Id.* at 88.) Consequently, it is unclear whether it is Duckworth's testimony that she recalls making a specific statement to Whiting during this conversation that they were permanently relocating to Florida. This isolated statement, even if true, was contradicted by subsequent events clearly demonstrating, from State Farm's perspective, that it was not a permanent move after all. The Duckworths did not purchase Florida insurance policies. (*See* Doc. No. 28–1 at 97.) The Move Center letter stated that if the move was not permanent, the Duckworths should contact their current agent, who could continue to serve their needs. Thus, from State Farm's perspective, when the Duckworths continued to contact the Maryland agent, allowing the agent to continue serving their needs, the Duckworths had not yet made a decision whether to permanently relocate. *See Davella*, 450 So.2d at 1204 (Colorado law instead of Florida law governed the rights and liabilities of the parties under an insurance policy because the insured continued to write to her Colorado agent to request renewal policies, keeping her Colorado policy intact because she was unsure if she would stay in Florida). When the Duckworths contacted State Farm to withdraw the Ford from driving status, State Farm noted the "other policies needing same mailing address change" (Doc. No. 41–7 at 18–19), indicating that the Duckworths had contacted State Farm to allow the insurer to continue serving their needs, not to give the insurer notice of a permanent relocation to Florida. Consistent with this, Whiting made no note of a permanent relocation in the file. Instead, Whiting entered the following on May 21, 2007: "Insured never transfered [sic] her insurance to Florida after being told several times to transfer to Florida Agent. Per Insured Ana Duckworth she was unsure of how long she would live in Florida." (Doc. 41–5 at 23.)

Though the Court finds that the lack of notice given State Farm precludes application of the public policy exception, the

Court will also address the Duckworths' Florida citizenship and the paramount public policy requirement for the sake of completeness and for potential appellate review.[7] The Florida Supreme Court cases addressing the *lex loci contractus* choice of law rule do not describe in detail what constitutes Florida citizenship for purposes of the public policy exception. The first case addressing the rule involved insureds who obtained two separate automobile policies from a New Hampshire agent while the insureds were residents of New Hampshire. *Gillen,* 300 So.2d 3. The insureds subsequently moved to Florida and notified the insurer of the move. *Id.* at 5. There they sold one car and bought another, and the insurer issued a new policy for the car in Florida but not for the other car. *Id.* When the insureds were later in an accident, they made claims on both policies. *Id.* The insurer refused to pay under the policy issued in New Hampshire, relying on an "other insurance" clause found in the policy. *Id.* The Florida Supreme Court found that because the insureds were in the process of permanently relocating to Florida and the issuance of a new Florida policy on the new car was an acknowledgment that the insureds had changed their domiciliary to Florida, public policy required the court to "assert Florida's paramount interest in protecting its own from inequitable insurance arrangements." *Id.* at 7.

The next case was *Sturiano,* 523 So.2d 1126. The insureds, New York residents,

did not inform their insurance company that they wintered in Florida. *Id.* at 1129. Under the doctrine of *lex loci contractus,* the court applied New York law to the insurance contracts the insureds had purchased in New York, reasoning that "to allow one party to modify the contract simply by moving to another state would substantially restrict the power to enter into valid, binding, and stable contracts." *Id.* at 1130. The Florida Supreme Court in *Sturiano* did not discuss what would make one a resident for purposes of the exception but established that winter residents of Florida who had permanent residency elsewhere and did not notify their insurance company of the migration did not fall under the public policy exception. *Id.* at 1129–30.

In *Strochak v. Federal Insurance Co.,* 717 So.2d 453 (Fla.1998), the Florida Supreme Court answered a question certified by the Eleventh Circuit Court of Appeals.[8] In that case, the insured moved from New Jersey to Florida after her husband's death. *Id.* at 454. She registered her car in Florida, listed her Florida residence, garaged the car at that address, and obtained a Florida-issued and -delivered policy. *Id.* at 455. The court applied Florida's *lex loci contractus* rule rather than the exception because the parties bargained for or at least expected Florida law to apply; hence, the court determined that the place of contracting was Florida. *Id.* at 455–56. The issue of Florida citizenship

---

7. These issues are no longer consequential because they would not change the Court's determination that the public policy exception does not apply in light of Duckworth's failure to inform State Farm that they were permanently relocating to Florida.

8. The Florida Supreme Court restated the question as: "Whether an excess carrier has a duty to make available the uninsured motorists (UM) coverage required by section

627.727(2), Florida Statutes (Supp.1990), to an insured under an existing policy on vehicles which had never been registered or principally garaged in Florida when any vehicle, covered or subsequently added, first becomes registered or principally garaged in Florida and when the policy is delivered or issued for delivery in Florida." *Strochak,* 717 So.2d at 453–54. The court answered the question in the affirmative. *Id.* at 454.

was not relevant because the policy was a Florida-issued contract involving Florida-based risk. *See Roach*, 945 So.2d at 1167.

Finally, in *Roach*, the Florida Supreme Court decided that the insureds, who were residents of Indiana with automobile insurance purchased from a State Farm agent in Indiana, were temporary rather than permanent residents of Florida even though they had a second home in Florida and spent almost half of the year in Florida. 945 So.2d at 1168.

Lower Florida courts offer scant detail regarding Florida citizenship. The insured in *Davella*, though she had lived in Florida for eleven months, was not considered a permanent resident for purposes of the public policy exception because she advised the Colorado-based insurance company on several occasions that her move to Florida was temporary and that she wanted to keep her Colorado policy intact 450 So.2d at 1204. The court in *Woodward* also sheds no light on when citizenship warrants the exception because it rejected the insureds argument that Florida law should apply to their policy based on the insureds' lack of notice to the insurer that they had permanently relocated to Florida and principally garaged their automobiles in Florida. 456 So.2d at 553–54.

■ Though the cases cited by Duckworth regarding domicile and citizenship address diversity jurisdiction, the Court agrees that the issue here is not just residency, which can be either temporary or permanent.[9] What *is* relevant is the degree of permanence attached to the Duckworths' living situation. Duckworth has not offered sufficient evidence establishing permanence.[10] Duckworth has instead demonstrated the opposite conclusion. The clearest intention that Duckworth was not sure yet if she wanted to come under the protection of Florida's laws was that she had not yet purchased Florida insurance. Further, Duckworth offers proof of Florida citizenship in the form of driver's licenses and voter registration cards. However, these were not licenses they had recently obtained after moving to Florida in 2006; the licenses were obtained during their previous time in Florida. The licenses still listed the California residence. The voter's registration cards add nothing to their claim that they were in the process of establishing permanent Florida residency—the cards were also from the time they previously lived in Florida. Further, they had not voted in Florida since 1998, and the cards expired in 2005.[11]

Finally, the Court finds that the facts presented in this case do not qualify as an issue of paramount public policy for pur-

9. In the Court's view, it does not matter whether this is called domicile or residency; either in a permanent form would constitute Florida citizenship for purposes of the public policy exception.

10. Duckworth argues she is entitled to a presumption that the Duckworths continued to be Florida citizens during their series of relocations following their first move from Florida and contends that State Farm has not rebutted that presumption. (Doc. No. 39 p. 8.) The Court finds such a presumption inapplicable because the issue here is both whether the insureds were Florida citizens and whether the insurer had *notice* of that citizenship; to argue continued Florida citizenship leads to the nonsensical conclusion that State Farm was on notice that the Duckworths were Florida citizens who enjoyed the protection of Florida's laws and public policies at the time the insurance contracts were issued in Maryland.

11. As *State Farm* points out, even if the driver's licenses and voter's registration cards along with Aquila Duckworth's Concealed Weapon License and American Legion Membership application evidence Florida residency, State Farm had no knowledge of them.

poses of the exception. While it is true that Florida has a paramount interest in protecting its citizens from inequitable insurance contracts, *Lincoln National Health and Casualty Insurance Co. v. Mitsubishi Motor Sales of America, Inc.,* 666 So.2d 159, 161 (Fla. 5th DCA 1995), this paramount interest does not extend to insureds who neither notified their out-of-state insurance company that they had permanently relocated to Florida nor purchased Florida automobile insurance. After having at least twice declined Florida automobile insurance, Duckworth cannot now assert a right to the protection of Florida laws.

Duckworth argues that Florida has a paramount public policy in providing insureds the opportunity to knowingly waive stacked uninsured motorist coverage. In support, she cites *Belmont,* 721 So.2d at 438, which held that the insureds were entitled to stacked coverage unless the insurer could establish that they waived the right to a written rejection by making an oral, knowing rejection of non-stacked coverage. However, the insured in *Belmont* did not recently move from another state to Florida. Rather, the insured originally purchased a Florida policy and renewed the policy under Florida law. *Id.* at 436. *Belmont* supports the contention that insurance carriers must give notice of the availability of stacked coverage for insurance contracts delivered or issued for delivery in Florida and when those contracts are renewed under Florida law ac-

companied by a modification in bodily injury liability limits. *Id.* at 438.

The Court also agrees with State Farm in distinguishing the *Gillen* court's finding of a paramount public policy and application of the exception. In *Gillen,* the Florida Supreme Court refused to apply New Hampshire law to interpret an automobile insurance contract because New Hampshire permitted "other insurance clauses," which the Florida Legislature implicitly forbade.[12] 300 So.2d at 7. This is not the case here—Maryland law does not permit the insurer to avoid giving notice of the availability of stacked coverage; rather, it does not permit stacked coverage at all. *See Kendall v. Nationwide Ins. Co.,* 348 Md. 157, 702 A.2d 767, 774 (1997). Florida law permits insurance carriers to insert policy provisions stating that "the coverage as to two or more motor vehicles shall not be added together to determine the limit of insurance coverage available to an insured person for any one accident...." Fla. Stat. § 627.727(9). The insured is considered to have made "an informed, knowing acceptance of such limitations" if the insurer informed the insured of the limitations and the insured signed a form acknowledging the waiver. *Id.* However, this requirement only applies to policies that are "delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state...."[13] Fla. Stat. § 627.727(1).

---

**12.** Justice Dekle, specially concurring, said that he only agreed that Florida law should apply because the insureds had, prior to the accident, become Florida residents and the vehicles were garaged in Florida "and their insurer had been so notified." *Gillen,* 300 So.2d at 7. He explains that the statute on which Florida's public policy is founded "is hinged upon the predicate expressed in the statute itself as to insurance 'delivered or issued for delivery in this state with respect to

any motor vehicle registered or principally garaged in this state.'" *Id.* (quoting Fla. Stat. § 627.0851, now Fla. Stat. § 627.727(1)). In Justice Dekle's view, Florida statutes cannot be "engrafted upon" another state's legislation "which that sovereign has seen fit to provide for its citizens." *Id.*

**13.** The Court agrees with the *Gillen* concurrence that the public policy at issue hinged upon whether the insurance was delivered or

Duckworth's policy was not delivered or issued for delivery in this state, nor has Duckworth provided proof or given notice to State Farm that the vehicles were principally garaged in this state. Thus, Duckworth is not one of the insureds about whom the Florida Legislature is concerned. The Court will not expand the narrow exception to the *lex loci contractus* rule to support what it views to be an irresponsible decision. After declining to purchase Florida automobile insurance, the Duckworths should not be given the opportunity to benefit from the protection of Florida insurance law.

### 3. Maryland Law Upholds Anti-stacking Provisions of the Insurance Policies

■ Because Maryland law applies to interpret the contract, the anti-stacking provisions of the contract will be upheld and Duckworth's breach of contract claims will be denied. Stacking of uninsured motorist benefits is not permitted under Maryland law, except in limited circumstances where minimum coverage is not provided. *See Kendall,* 702 A.2d at 774 (stating that the court held in two prior cases that stacking uninsured coverage was prohibited in Maryland). Section 19–513(b) of the Maryland Insurance Code prevents a person from recovering uninsured motorist benefits "from more than one motor vehicle liability insurance policy or insurer on a duplicative or supplemental basis."

■ In Maryland, an insurance contract can only be construed against the insurer when the terms are ambiguous. *Id.* at 770. Maryland courts will give words "their customary, normal meaning when insurance contracts are interpreted" and have "no alternative but to enforce the policy's terms" when there is no ambigui-

ty. *Howell v. Harleysville Mut. Ins. Co.,* 305 Md. 435, 505 A.2d 109, 113 (1986) (finding that insurance policies did not permit stacking under the facts of the case). This Court finds that the terms of the Chevrolet and Ford policies are unambiguous; thus, it must enforce the policies' terms. *See Kendall,* 702 A.2d at 771. The policies clearly state that uninsured motorist coverage does not apply:

> FOR *BODILY INJURY* TO *YOU, YOUR SPOUSE,* OR ANY *RELATIVE* WHILE OCCUPYING OR STRUCK AS A PEDESTRIAN BY A MOTOR VEHICLE OWNED BY *YOU,* YOUR SPOUSE, OR ANY *RELATIVE,* and which is not insured under the liability coverage of this policy.

(State Farm's Ex. 2–3 p. 14.) Because Aquila Duckworth was occupying the 2001 Yamaha at the time of the accident resulting in his fatal injury, Duckworth can only receive uninsured motorist benefits under the Yamaha policy; they are clearly unavailable according to the terms of the Chevrolet and Ford policies. The Court thus will declare that State Farm's payment of the $100,000 available under the Yamaha policy satisfies its contractual obligation to Duckworth regarding uninsured motorist coverage.

### 4. The Contracts Will Not Be Reformed

■ Based on the Court's determination that the anti-stacking provisions in the insurance contracts are valid under Maryland law, reformation of the contracts is not warranted. As previously discussed, the law of Maryland, the place where the contracts were executed, governs the rights and liabilities of the parties in determining an issue of insurance coverage. *Roach,* 945 So.2d at 1163. Thus, Maryland

law also applies to the reformation claim.[14] In Maryland, a court of equity will reform a contract in one of two circumstances: "either there must be mutual mistake, or there must be fraud, duress, or inequitable conduct." *Md. Port Admin. v. John W. Brawner Contracting Co., Inc.*, 303 Md. 44, 492 A.2d 281, 288 (1985). This mistake must be one of fact. (*Id.* (citing *Flester v. Ohio Cas. Ins. Co.*, 269 Md. 544, 307 A.2d 663, 669 (1973)); *Janusz v. Gilliam*, 404 Md. 524, 947 A.2d 560, 567 (2008) (holding that in Maryland, equity will reform a contract only if there has been a mutual mistake of fact in the formation of the contract)).

Duckworth argues that the policies "fail to reflect the mutual intent of the parties that the policies be issued in compliance with applicable law and that the coverages be stackable" and should be reformed to remove the non-stacking exclusion. (Doc. No. 14 p. 15.) Duckworth has not offered any evidence or detail identifying the nature of the mutual mistake, beyond the assertion that the parties' intent was to have policies in compliance with the law and that coverages be stackable. Because the policies comply with Maryland law, any purported mistake regarding noncompliance with applicable law evaporates.

### 5. State Farm Did Not Commit a Breach of Fiduciary Duty

The Court also grants summary judgment in favor of State Farm regarding Duckworth's claim for breach of fiduciary duty. Because the Court interprets the Chevrolet and Ford policies according to Maryland law, the Court finds that the policies do not violate Maryland uninsured motorist coverage provisions and State Farm did not commit a breach of fiduciary duty.[15]

The parties do not contest that the Florida choice of law rule for torts is the significant relationship test. *See Bishop*, 389 So.2d at 1001 (receding from the "inflexible *lex loci delicti* rule" and adopting the significant relationship test). Under the significant relationship test, the local law of the state that has the most significant relationship to the occurrence and the parties determines the rights and liabilities of the parties. *Connell v. Riggins*, 944 So.2d 1174, 1176–77 (Fla. 1st DCA 2006); *Bishop*, 389 So.2d at 1001 (quoting Restatement (Second) of Conflict of Laws, § 145(1) (1971)). Contacts considered for purposes of the significant relationship test include the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, and place of business of the parties; and the place where the relationship between the parties is centered. *Bishop*, 389 So.2d at 1001. "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.* The *Bishop* court explains that "the state where the injury

---

**14.** Relief would also not be warranted under Florida law, where the circumstances under which written instruments may be reformed are similar to those in Maryland law: (1) "due to mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument' " or (2) "there is a mistake on the part of one side of the transaction, and inequitable conduct on the part of the other side." *Providence Square Ass'n, Inc. v. Biancardi*, 507 So.2d 1366, 1372 n. 3 (Fla.1987).

**15.** Like the claim for reformation of the contracts, the breach of fiduciary duty claim is also eliminated by the Court's finding that Maryland law governs the rights and liabilities of the parties under the contracts. However, in the interest of thoroughness and potential appellate review, the Court will apply the appropriate choice of law test and evaluate the breach of fiduciary duty claim.

occurred would, under most circumstances, be the decisive consideration in determining the applicable choice of law." *Id.* Here the alleged injury resulting from the alleged breach occurred when the Duckworths were still in Maryland and notified the Maryland agent that they were moving to Florida. Maryland was the situs of the alleged injury—it was there that the agents would have failed to inform the Duckworths about the availability of stacked coverage under Florida insurance law. More importantly, the relationship between the parties was centered in Maryland. Thus, the Court declares that Maryland law governs Duckworths' claim for breach of fiduciary duty.[16]

Duckworth contends that even under Maryland law, "the agent can owe a fiduciary duty to the insured." *Popham v. State Farm Mut. Ins. Co.*, 333 Md. 136, 634 A.2d 28, 38 (1993). While it is true that an agent can owe a duty under Maryland law to inform the insured regarding available coverage, *Popham* involved an excess or umbrella policy providing uninsured motorist coverage, which is permitted under Maryland law. *Id.* The *Popham* court held that because State Farm failed to advise the insureds of this coverage, which was an optional component of the policy the insureds were purchasing, a trier of fact could conclude that the agent "failed to exercise the requisite skill and

care of an insurance agent." *Id.* In the instant case, State Farm did not have a duty to advise the Duckworths that they could obtain stacked coverage because that type of coverage was unavailable under the Maryland policies.

State Farm cites *Sadler,* 776 A.2d at 35, to support its argument that the agent did not owe the Duckworths a duty in the absence of a "special relationship." The issue in *Sadler* concerned the adequacy of liability coverage, and the court concluded that "in the absence of a special relationship, an insurance agent or broker has no affirmative, legally cognizable tort duty to provide unsolicited advice to an insured regarding the adequacy of liability coverage." *Id.* at 46. The instant case does not address the adequacy of the amount of liability coverage; rather, it concerns the availability of other types of coverage and whether the agent has a duty to inform. However, the *Sadler* court also mentions a broader duty to inform about "adequate coverage" absent a special relationship or a request to provide such information. *Id.* at 39–40. Assuming uninsured motorist benefits fall under "adequate coverage," State Farm did not have an affirmative duty to inform the insureds regarding stacked coverage under Florida law because a special relationship did not exist between the Duckworths and State

---

16. Even if Florida law applied to the claim of breach of fiduciary duty, the claim would still fail. In her response to State Farm's motion for summary judgment, Duckworth cites *Seascape of Hickory Point Condominium Ass'n v. Associated Insurance Services, Inc.*, 443 So.2d 488 (Fla. 2d DCA 1984), to show that an agent has a duty to recommend insurance coverage that the agent knew or should have known the client needed. (Doc. No. 43 p. 15.) However, it is not clear how the Duckworths expected the agent to inform them about available coverage under Florida law regarding their Maryland policies. Duckworth also cites *Warehouse Foods, Inc. v. Cor-*

*porate Risk Management Services, Inc.*, 530 So.2d 422, 423–24 (Fla. 1st DCA 1988), which states that "an agent is required to use reasonable skill and diligence, and liability may result from a negligent failure to obtain coverage which is specifically requested or clearly warranted by the insured's expressed needs." Duckworth has not shown that she "specifically requested" stacked coverage or that it was "clearly warranted by [her] expressed needs." Informing the Maryland agent that she wanted "full" coverage on the automobiles under the Maryland policies did not constitute a request for "full" coverage under a Florida policy. (*See* Doc. 28–2 p. 37.)

Farm. A "special relationship" requires more than the "ordinary insurer-insured relationship" and may be shown "when an insurance agent or broker holds himself or herself out as a highly skilled insurance expert, and the insured relies to his detriment on that expertise." *Id.* at 35. This relationship may also be shown by a long term relationship of confidence where the agent assumes a duty to render advice and is compensated accordingly beyond the normal premiums.[17] *Id.* The Court does not find any indication that a special relationship existed between Duckworth and State Farm. Instead, the insurer-insured relationship was ordinary: the Duckworths told Whiting that they needed coverage, and she sought it on their behalf. (*See* Doc. 28–2 p. 76.)

■ Duckworth argues that "the issue of fiduciary duty is fact-specific and cannot be resolved on summary judgment" and that "it cannot be said that as a matter of law an insurance agent can never be a fiduciary of the insured." (Doc. No. 43 p. 16.) The standard for granting summary judgment is not whether an issue is fact-specific, but whether genuine issues of material fact remain and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Further, the claim does not involve the question of whether an insurance agent can "never be" a fiduciary of the insured; the issue is whether this agent owed a fiduciary duty to inform Duckworth about the availability of stacked uninsured coverage under Florida insurance law. The Court can and does find that State Farm did not owe Duckworth a fiduciary duty. Therefore, State Farm did not breach a fiduciary duty, and Duckworth did not incur damages.

### C. Plaintiff State Farm's Motion in Limine

Granting summary judgment in favor of State Farm renders moot its motion in limine.

## V. CONCLUSION

Based on the foregoing, it is ORDERED as follows:

1. Plaintiff State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment (Doc. No. 41), filed on May 1, 2009, is GRANTED.

2. Defendant Anna N. Duckworth's Motion for Partial Summary Judgment (Doc. No. 39), filed on May 1, 2009, is DENIED.

3. State Farm's Motion in Limine (Doc. No. 45), filed on June 1, 2009, is MOOT.

4. The Clerk shall enter a FINAL JUDGMENT providing as follows: The Court hereby declares that (1) Maryland law governs the rights and liabilities of the parties under the Chevrolet and Ford Automobile Insurance Policies (the "Policies"); (2) the Policies do not provide for stacking of uninsured motorist benefits; and (3) State Farm has satisfied its obligation to Duckworth regarding the uninsured motorist benefits by paying the $100,000 available under the Yamaha policy. This judgment shall also provide that State Farm shall recover its costs of action.

5. The Clerk shall close this case.

---

**17.** The Court disagrees with State Farm's characterization of these factors; they are not requirements but elements that can be used to show a special relationship.