DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOHN H. JERVIS** and **LINDA JERVIS,** individually
and as husband and wife,
Appellants,

v.

**JOSE CASTANEDA** and **GEICO GENERAL INSURANCE COMPANY,**
Appellees.

No. 4D17-332

[April 25, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Gregory M. Keyser, Judge; L.T. Case No. 50-2011-CA-006657-XXXX-MB-AE.

Kara Berard Rockenbach of Link & Rockenbach, P.A., West Palm Beach, Andrew A. Harris of Burlington & Rockenbach, P.A., West Palm Beach, Daniel G. Williams of Gordon & Doner, P.A., Palm Beach Gardens, and Jeffrey M. Liggio and Geoff S. Stahl of Liggio Law, P.A., West Palm Beach, for appellants.

Suzanne Youmans Labrit and James P. Terpening, III of Shutts & Bowen LLP, Tampa, Francis A. Zacherl, III of Shutts & Bowen LLP, Miami, and Amber Stoner of Shutts & Bowen LLP, Tallahassee, for appellees.

GROSS, J.

The core issue in this case is whether an insurance company that completely fails to comply with the written notice provisions of section 627.727(1) & (9), Florida Statutes (2010),[1] is entitled to establish that an insured knowingly rejected stacked coverage or knowingly accepted non-stacked uninsured motorist coverage. We hold that the failure to serve the mandatory notice precludes the insurance company from claiming that

---

[1] As Geico correctly points out, the 2010 version of section 627.727 applies here. *See Hassen v. State Farm Mut. Auto. Ins. Co.,* 674 So. 2d 106, 108 (Fla. 1996) ("[T]he statute in effect at the time an insurance contract is executed governs substantive issues arising in connection with that contract.").

the insured orally made a knowing choice regarding the stacking of UM coverage.

Appellant John Jervis purchased uninsured motorist coverage from Geico General Insurance, Co. for two vehicles. He completed an online form which, in the circuit court, Geico argued was an election of non-stacked coverage. The first circuit judge assigned to the case ruled on summary judgment that Geico's online form was void; the form was not actually signed by Jervis, Jervis had no ability to reject or deselect non-stacked coverage, and the signing page did not have the warning language required by statute. The judge ruled:

> The Court has determined as a matter of law that the documentation used by GEICO does not comport with Florida statute 627.727 which requires that the insured be provided a form that in twelve (12) point type contains certain warnings. It further provides that this form is to be signed by the insured. If it is signed, then it is conclusively presumed that there was an informed knowing of rejection of coverage or election of lower limits. The court finds that the form containing the twelve (12) point bold type was not actually signed by the insured. The page on which the act of signing took place did not have any required warning language. It incorporated the warning by reference. It was not electronically possible to actually sign on the M9 form. One must sign on a precursor screen.

> Therefore the M9 waiver of uninsured motorist coverage is void.

> Secondly, the signer had no electronic ability to deselect the form's preselected waiver of stacked UM coverage. By law the presumption is that there is no waiver but this form defeats the presumption. The insured's only choices were to passively accept or else to cancel.

> Therefore the M9 waiver of uninsured motorist coverage is void.

Geico has not challenged this order on appeal. After summary judgment was granted, Geico amended its affirmative defenses to assert that Jervis "made an oral rejection of stacked UM coverage."

The case went to a jury trial on the oral rejection issue and the jury ruled in favor of Geico.

Section 627.727, Florida Statutes, lays certain ground rules for UM coverage. Subsection 627.727(1) sets the parameters for an insured's written rejection of UM coverage or selection of lower uninsured limits than the bodily injury liability limits of a policy. In great detail, the statute sets out the mandatory procedure for an insured's rejection of UM coverage or selection of lower limits:

> The rejection or selection of lower limits *shall* be made on a form approved by the office. The form *shall* fully advise the applicant of the nature of the coverage and *shall* state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form *shall* be in 12-point bold type and *shall* state: "You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully." If this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds. The insurer *shall* notify the named insured at least annually of her or his options as to the coverage required by this section. Such notice *shall* be part of, and attached to, the notice of premium, *shall* provide for a means to allow the insured to request such coverage, and *shall* be given in a manner approved by the office. Receipt of this notice does not constitute an affirmative waiver of the insured's right to uninsured motorist coverage where the insured has not signed a selection or rejection form.

*Id.* (emphasis added). The nine "shalls" in the statute lead to the conclusion that the written notice is a mandatory prerequisite to an insured's waiver of the right to UM coverage.

Similar to the mandatory requirements of subsection (1), subsection 627.727(9) contains mandatory requirements for the way that insurers can avoid the judicial doctrine of stacking:[2]

---

[2] "Stacking is a judicial creation, based on the common sense notion that an insured should be entitled to get what is paid for. . . . Thus, if the insured pays separate premiums for uninsured motorist protection on separate vehicles, the insured should get the benefit of coverage for each individual premium paid." *United Servs. Auto. Ass'n v. Roth*, 744 So. 2d 1227, 1229 (Fla. 4th DCA 1999) (internal citation omitted).

(9) Insurers may offer policies of uninsured motorist coverage containing policy provisions, in language approved by the office, establishing that if the insured accepts this offer:

(a) The coverage provided as to two or more motor vehicles shall not be added together to determine the limit of insurance coverage available to an injured person for any one accident....

\*\*\*

**In connection with the offer authorized by this subsection, insurers *shall* inform the named insured, applicant, or lessee, on a form approved by the office, of the limitations imposed under this subsection and that such coverage is an alternative to coverage without such limitations**. If this form is signed by a named insured, applicant, or lessee, it shall be conclusively presumed that there was an informed, knowing acceptance of such limitations. . . .

§ 627.727(9), Fla. Stat. (2010) (emphasis added). Subsection (9) mandates notice to the insured in writing, on a form approved by the Office of Insurance Regulation,[3] of the limitations allowed by the subsection.

Over the years, the legislature has created a statutory framework that promotes UM coverage. *See Quirk v. Anthony*, 563 So. 2d 710, 714 (Fla. 2d DCA 1990). It is desirable for motorists to self-insure against potential loss rather than look to state taxpayers for financial assistance after an auto accident. In section 627.727, the legislature made plain its desire that insureds make "informed" and "knowing" decisions about UM coverage. §627.727(1), (9), Fla. Stat.

To the average insurance consumer, thinking about UM stacking is as enjoyable as a dramatic reading from the Internal Revenue Code. So that the insured need expend only minimal effort at becoming fully informed, the statute requires certain information, in writing, to be placed before an insured's eyes as a mandatory prerequisite to an "informed" and "knowing" decision about UM coverage. We described this mandatory notice requirement in *Government Employees Ins. Co. v. Douglas*, 627 So. 2d 102, 103 (Fla. 4th DCA 1993):

[P]ursuant to [section 627.727], to limit coverage validly, *the insurer must first satisfy the statutorily mandated*

---

[3] *See* § 624.05(3), Fla. Stat. (2010) (defining "Office" as used in the Insurance Code).

- 4 -

*requirements of notice to the insured* and obtain a knowing acceptance of the limited coverage.

(Emphasis added). In affirming *Douglas*, the Supreme Court echoed our discussion of the mandatory notice requirement of section 627.727:

> As recognized by the Fourth District Court of Appeal, to limit coverage validly, *the insurer must satisfy the statutorily-mandated requirement of notice to the insured* and obtain a knowing acceptance of the limited coverage. An insurer who provides coverage with the section 627.727(9)(d) limitation is also statutorily required to file revised, decreased premium rates for such policies.
>
> It is our opinion that these requirements were the quid pro quo given by the legislature to insurers for the right to limit uninsured motorist coverage by this exclusion. As further recognized by the Fourth District in its opinion in this case, if the policy exclusion is valid despite noncompliance with the statute, the provision of section 627.727(9)(d) is rendered meaningless.

*Government Employees Ins. Co. v. Douglas,* 654 So. 2d 118, 120-21 (Fla. 1995) (emphasis added).

The record in this case is that Geico's notice was void, which means that, in the eyes of the law, there was no section 627.727 notice at all. Without such notice, there can be no informed and knowing acceptance of the limitations on stacking. To allow an insurance company to prove that an insured orally and knowingly rejected stacked coverage in the absence of the statutory notice would undermine the legislature's determination that such written notice is mandatory. The summary judgment ruling in this case conclusively established that the notice was void. Jervis's second motion for summary judgment should have been granted, obviating the necessity of a trial. Similarly, at the jury trial, Jervis's motion for directed verdict should have been granted.

We do not find *Belmont v. Allstate Ins. Co.*, 721 So. 2d 436 (Fla. 2d DCA 1998), to be controlling. That case involved a policy issued in 1991, where the insurance company provided a section 627.727 notice in the form "recommended by the insurance commissioner." *Id.* at 437 n.1. That notice provided that the insured's selection of any option regarding UM coverage applied to "future renewals or replacements of such policy which are issued at the same bodily injury liability limits." *Id.* A later policy increased bodily injury liability limits. On summary judgment, the trial

court held that the insured's initial non-stacking election under the 1991 policy controlled the later policy. *Id.* at 437.

Relying on the language of the initial notice, the Second District reversed, holding that because the coverage limits had increased, the insured was "entitled to stacked coverage unless Allstate can establish that the [insured] waived the right to a written rejection by making an oral, knowing rejection of non-stacked coverage. *Id.* at 438.[4]

We do not apply *Belmont* here for two reasons. First, *Belmont* involved an initial notice that complied with section 627.727; in this case there was no notice. Second, *Belmont* based its decision on "the contract language in Allstate's form," not on the requirements of section 627.727. *Id.* at 438 n.2. Our decision is based on the language of the statute. Nothing in *Belmont* indicates that it turns on the absence of a statutory notice before the initial purchase of a policy. We note that the 2010 version of the statute appears to place the burden on the insured to request a UM coverage change on subsequent policies, and pay for such increased coverage, after the insured accepted coverage limitations, with proper notice, on an earlier policy. *See* n.4. Thus if the *Belmont* fact situation had occurred in this case, without the crucial language in its initial 627.727 notice, Allstate could successfully argue that where the company gave proper notice prior to the insured's initial selection of UM limitations, the burden was on the insured to request an increase in stacking or UM coverage on a renewal policy, and pay the increased premium, where bodily injury liability limits had increased.

We also decline to follow *Muhammed v. Allstate Ins. Co.*, 582 So. 2d 768 (Fla. 3d DCA 1991). That one paragraph decision involved a notice form that "*arguendo* departs from the one statutorily provided by section

---

[4] The 2010 version of section 627.727(9) gives effect to an initial acceptance of UM limitations, even where later policy limits are increased:

> When the named insured, applicant, or lessee has initially accepted such limitations, such acceptance shall apply to any policy which renews, extends, *changes*, supersedes, or replaces an existing policy unless the named insured requests deletion of such limitations and pays the appropriate premium for such coverage.

(Emphasis added).

Under this statute, the insured would be precluded from arguing that he or she requested different coverage on a replacement policy unless the appropriate premium for such coverage had been paid. *See Roth*, 744 So. 2d at 1230.

627.727." *Id.* at 768. There is too little description of the notice to determine if it is analogous to the void notice in this case.

For these reasons, we reverse the final judgment in favor of Geico and remand for the entry of a final judgment in favor of appellants entitling appellants to stacked UM coverage.

WARNER and LEVINE, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***