DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SHANNET BROWN-PETERKIN** and
**COURTNEY PETERKIN,** her husband,
Appellants,

v.

**KEITH DAVID WILLIAMSON, STEPHEN RYAN WILLIAMSON,** and
**GEICO GENERAL INSURANCE COMPANY,**
Appellees.

No. 4D19-2950

Appeal of a nonfinal order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jack Tuter, Judge; L.T. Case No. CACE15-016906(07).

———————————————

**STEPHEN COCCARO** and **SHARON COCCARO**,
Appellants,

v.

**GEICO GENERAL INSURANCE COMPANY,**
Appellee.

No. 4D19-3665

Appeal of a nonfinal order from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; James Nutt, Judge; L.T. Case No. 502014CA002048XXXXMBAO.

———————————————

[November 12, 2020]

Gregg A. Silverstein of Silverstein, Silverstein & Silverstein, P.A., Aventura, Brett C. Powell of The Powell Law Firm, P.A., Miami, Daniel G. Williams of Gordon & Partners, Palm Beach Gardens, Jeffrey M. Liggio and Geoff S. Stahl of Liggio Law, P.A., West Palm Beach, and Philip M.

Burlington and Jeffrey V. Mansell of Burlington & Rockenbach, P.A., West Palm Beach, for appellants.

Frank A. Zacherl of Shutts & Bowen LLP, Miami, and Garrett A. Tozier of Shutts & Bowen LLP, Tampa, for appellee Geico General Insurance Company.

WARNER, J.

In actions for declaratory judgment as to auto insurance coverage, the plaintiffs in the respective underlying cases moved to certify a statewide class comprised of Geico policyholders who rejected or lowered uninsured/underinsured (UM) motorist coverage through Geico's online signature process. The plaintiffs sought a declaration that Geico's UM coverage rejection process fails to comply with Florida law and does not properly advise policyholders regarding UM coverage options. The circuit courts in Broward and Palm Beach counties denied the separate class certification motions, and the plaintiffs appealed. We affirm the orders in this consolidated appeal. Because the validity of Geico's process has already been decided by this court, neither plaintiff has standing to seek declaratory relief on behalf of the proposed class. Additionally, because of the difference between various iterations of the online process over the years, there is no commonality between plaintiffs and class members or typicality because of the potential of defenses to individual members.

*Background*

Florida law requires insurance companies to give customers the opportunity to purchase UM coverage that is at least equal to the amount of bodily injury coverage. If the customer wishes to lower their UM coverage limit or reject the coverage altogether, the customer must sign a form, which constitutes a knowing, written rejection of UM coverage, commonly referred to as an M9 form. § 627.727(1), Fla. Stat. (2011). A signed M9 form that complies with the statute establishes a conclusive presumption that the insured has waived UM coverage. *Id.* The statute details the mandatory procedure for UM coverage rejection:

> The rejection or selection of lower limits shall be made on a form approved by the office. The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form shall be in 12-point bold type and shall state: "You are electing not to purchase certain valuable coverage which

2

protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully." If this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds. The insurer shall notify the named insured at least annually of her or his options as to the coverage required by this section. Such notice shall be part of, and attached to, the notice of premium, shall provide for a means to allow the insured to request such coverage, and shall be given in a manner approved by the office. Receipt of this notice does not constitute an affirmative waiver of the insured's right to uninsured motorist coverage where the insured has not signed a selection or rejection form.

*Id.* In addition, customers may reject stacked coverage by signing an approved form, pursuant to section 627.727(9), Florida Statutes (2011). Accordingly, Geico was and is required to fulfill the statutorily mandated notice requirement and obtain a written waiver of UM coverage from its customers.

Geico's online signature process prior to 2013 for the purchase of insurance required the customer to click through several screens, one of which instructed the customer to review the forms that needed a signature. The M9 form, by which the customer could reject or lower UM coverage, was located behind a hyperlink. Below the hyperlink, the screen provided:

Please select the "Sign Form(s) and Continue" button below. By selecting this button, you indicate that you have reviewed and agree to electronically sign the form(s) selected above. You will then be provided with a chance to View, Download or Print your electronically signed documents.

By clicking through, a customer could e-sign the M9 form without ever viewing it and without the boldface warning required by statute on the signature page.

Since 2013, Geico has changed the procedure by which it presents its M9 form twice. Between 2013 and 2016 the customers were also not required to view the M9 form or to sign that form, but the form did comply with the statute. In 2016, Geico began displaying the M9 form to the customer without requiring the customer to click a hyperlink. However,

3

the form was static and had the preselected choice of no UM coverage, which the customer could not change.

The plaintiffs in the underlying actions each purchased Geico policies and completed the online signature process without viewing the M9 form based on the 2010-2013 version of the online process. Ms. Brown-Peterkin purchased a policy in 2011 and rejected UM coverage altogether, and Mr. Coccaro purchased a policy in 2012 and selected UM coverage below his policy's bodily injury limits.

In 2013, Ms. Brown-Peterkin was injured in a car accident. Ms. Brown-Peterkin and her husband made a claim for UM benefits under her Geico policy. Geico alleged the plaintiff rejected coverage through the online signature process and denied the claim.

Mr. Coccaro's wife was injured in a separate car accident the same year. Mr. Coccaro and his wife alleged their policy's UM coverage was equal to the policy's bodily injury limits. Geico alleged the Coccaros lowered their UM coverage through the online signature process and denied the claim.

Ms. Brown-Peterkin and Mr. Coccaro separately filed complaints individually and on behalf of a putative class, alleging that Geico failed to comply with section 627.727 by not fully advising customers regarding UM coverage rejection and stacking options under section 627.727(9). Both plaintiffs asked the circuit courts to enter an order declaring Geico to have violated Florida law by failing to fully advise applicants regarding UM coverage and stacking and estopping Geico from denying class members UM coverage in any amount less than their stacked bodily injury coverage limit. They also alleged individual counts seeking damages, but in the declaratory judgment count they did not seek monetary damages or a declaration of the right to monetary damages. The class was defined as:

> All persons who contacted GEICO by telephone to purchase a Florida motor vehicle insurance policy, who were then directed by GEICO to the www.geico.com website, who were not provided, and made to sign, the form required by Florida Statute Section 627.727 describing the statutorily mandated uninsured/underinsured motorists coverage options before selecting lower uninsured/underinsured motorists limits or totally rejecting any uninsured/underinsured motorists coverage.

4

Geico answered both complaints, contending, among other things, that the plaintiffs had made a knowing, informed written rejection of coverage based upon the online form rejecting coverage.

During the pendency of their complaints, this court decided *Jervis v. Castaneda*, 243 So. 3d 996 (Fla. 4th DCA 2018). In *Jervis*, our court upheld a summary judgment finding that Geico's online UM coverage rejection process, as it existed prior to 2013, failed to comply with section 627.727(1) and (9), because Geico did not present the form to the customer with the required bold type warning, and the customer could not sign the form. Thus, Geico's notice was void. Geico argued it could prove the customer orally waived UM coverage. But, because its written notice was void, it amounted to no notice at all. Geico was precluded from arguing that the customer provided an oral waiver. *Id.* at 997. "To allow an insurance company to prove that an insured orally and knowingly rejected stacked coverage in the absence of the statutory notice would undermine the legislature's determination that such written notice is mandatory." *Id.* at 999. In *Jervis*, we reversed a final judgment in favor of Geico and remanded "for the entry of a final judgment entitling appellants to stacked UM coverage." *Id.* at 1000.

The Third District was presented with a similar issue in *Geico Indemnity Co. v. Perez*, 260 So. 3d 342 (Fla. 3d DCA 2018). The court held that Geico was not entitled to the conclusive presumption that an insured had rejected UM coverage, because Geico's M9 form failed to track the language of the section 627.727. The court did not reach the issue of whether Geico's e-signature process complied with Florida law. *Id.* at 352, n.9. The court remanded for a new trial on whether the insured made a knowing, written rejection. *Id.* at 354. Accordingly, while Geico could not establish the conclusive presumption created by section 627.727, the court did not reach the issue of whether Geico's process violated Florida law, as we did in *Jervis*. Under *Perez*, Geico could present other evidence at trial to establish a knowing, written rejection of UM coverage.

The Third District later distinguished *Perez* from *Jervis* because Geico never claimed the insured in *Perez* made an oral waiver, as it claimed in *Jervis*. *Perez v. Geico Indem. Co.*, 283 So. 3d 398 (Fla. 3d DCA 2019). Instead, Geico claimed that Perez had made a knowing written rejection of the UM coverage, for which evidence of an oral waiver was relevant.

With *Jervis* and *Perez* as the backdrop, in both cases the circuit courts held lengthy hearings on class certification. The plaintiffs showed, through Geico's own records, that this issue affected thousands of Geico customers. They presented their own experience dealing with the online

form, and presented testimony from other similarly situated customers. One customer testified to their experience involving the second time frame and the second iteration of the online M9 form. The plaintiffs also presented voluminous evidence regarding Geico's business practices.

The circuit courts entered orders denying class certification. In the orders, the courts noted both *Jervis* and *Perez.* Both courts explained that *Jervis'* holding that the failure to use the statutorily mandated form for rejecting UM coverage precluded Geico from arguing that *Jervis* could orally reject coverage. *Perez* simply held that oral evidence would be admissible, if relevant, to prove a knowing written rejection by other means.

Because this court had not addressed the same issue as in *Perez*, and Geico argued that it may have defenses to an individual customer based upon "various class members on theories of waiver, ratification, estoppel, mootness, ripeness and so on," the courts concluded that "individualized determinations will have to be made on any claim of knowing waiver[.]"

The courts concluded that the plaintiffs did not have standing, nor had they satisfied the typicality, commonality, or predominance requirements of Florida Rule of Civil Procedure 1.220. The courts added that the plaintiffs were not adequate class representatives for all three sub-categories of the proposed class. Finally, neither plaintiff had shown the superiority of a class action. The plaintiffs challenge those findings on appeal.

*Analysis*

We have jurisdiction to review a non-final order denying class certification. Fla. R. App. P. 9.130(a)(3)(C)(vi). This court reviews orders on class certification for abuse of discretion. *Sosa v. Safeway Premium Fin. Co.,* 73 So. 3d 91, 105 (Fla. 2011). The circuit court's factual findings must be supported by competent, substantial evidence. *Id.*

To obtain class certification, a movant must plead and prove four factors under rule 1.220(a):

> (1) the members of the class are so numerous that separate joinder of each member is impracticable, (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, (3) the claim or defense of the representative party is typical of the claim or defense of

6

each member of the class, and (4) the representative party can fairly and adequately protect and represent the interests of each member of the class.

Fla. R. Civ. P. 1.220(a). A movant must also plead and prove the factors of at least one of the subdivisions of rule 1.220(b). *Sosa*, 73 So. 3d at 106.

Standing must be determined before rule 1.220's requirements are considered. *Stone v. CompuServe Interactive Servs., Inc.*, 804 So. 2d 383, 388 (Fla. 4th DCA 2001). A trial court's determination as to whether a party has standing with respect to a class action is reviewed de novo. *Sosa*, 73 So. 3d at 116.

To establish standing, "the class representative must illustrate that a case or controversy exists between him or her and the defendant, and that this case or controversy will continue throughout the existence of the litigation." *Id.*

The plaintiffs argue they have established standing to represent the class by pleading a valid declaratory judgment action. However, once a prior appellate decision settles a question of law as to which declaratory relief is sought, the relief requested is rendered moot. *Santa Rosa County v. Admin. Comm'n, Div. of Admin. Hearings*, 661 So. 2d 1190, 1193 (Fla. 1995); *see also Vasquez v. Citizens Prop. Ins. Corp.*, 3D18-769, 2020 WL 1950831 (Fla. 3d DCA Mar. 18, 2020).

The plaintiffs seek a declaration that the process by which Geico advised customers regarding UM coverage and stacking options violates Florida law and that Geico is estopped from denying class members UM coverage in any amount less than their stacked bodily injury coverage limit. We addressed that question in *Jervis* by holding that Geico's M9 form, which was the exact version of the form at issue in the plaintiffs' cases, did not comply with section 627.727 and did not constitute a knowing, written waiver. It was the equivalent of no notice. We remanded for judgment in favor of the insured entitling him to stacked UM coverage. *Jervis*, 243 So. 3d at 997.

The plaintiffs cannot have standing to represent the proposed class, because our decision in *Jervis* has already determined the relief sought as to the plaintiffs in the declaratory judgment action, the only action upon which class action status is requested. Plaintiffs did not request damages or monetary relief in this count. Based upon *Jervis,* plaintiffs would be entitled to monetary relief on their individual counts seeking monetary damages.

7

Moreover, the plaintiffs cannot establish commonality and typicality of claims as required by rule 1.220(a)(2) and (3). The proposed class encompasses customers who purchased policies between 2010 and 2016. Geico's procedure changed twice during the relevant time frame, so the relevant facts as to the proposed class members differ depending on when they purchased a policy. These plaintiffs' cases are governed by *Jervis,* whereas those persons who rejected policies with the 2013 changed language or the 2016 online process have different contentions not covered by *Jervis.* In addition, under *Perez,* Geico may also be able to raise different defenses to certain insured's claims in the two other versions of the online process. Typicality is defeated if the defendant has a unique defense to the class representative's claim. *Miami Auto. Retail, Inc. v. Baldwin*, 97 So. 3d 846, 853-54 (Fla. 3d DCA 2012).

Accordingly, we affirm the circuit court's denial of class certification.

MAY and CONNER, JJ., concur.

*        *        *

***Not final until disposition of timely filed motion for rehearing.***